**ALUMINUM COMPANY OF AMERICA, a corporation, and Alcoa Sport Products Company, a corporation, Plaintiffs,**

v.

**AMEROLA PRODUCTS CORPORATION, a corporation, Defendant.**

Civ. A. Nos. 73–248 and 73–698.

United States District Court, W. D. Pennsylvania.

March 5, 1976.

Cloyd R. Mellott, C. Arthur Wilson, Jr., J. W. Montgomery, III, Richard M. Zomnir, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for plaintiffs.

Edward F. Welsh, William G. Kratz, Parmelee, Miller, Welsh & Kratz, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge.

These patent proceedings are presented to the Court by the plaintiffs, Aluminum Company of America and Alcoa Sport Products Company, against the defendant, Amerola Products Corporation, pursuant to the Federal Declaratory Statute, 28 U.S.C.A., § 2201 et seq. A question as to validity and infringement is presented with respect to United States Letters Patent No. 3,479,030, relating to the manufacture of aluminum baseball bats, hereinafter referred to as the "Merola Patent". The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel. Based thereon, it is the considered judgment of the Court that defendant's patent is invalid, lacking nonobviousness, as a matter of law. Since the patent is invalid, no basis exists for concluding that there was any infringement by the plaintiffs.

A brief explanation should be given as to the reasons for two civil actions which challenge the same patent. On March 27, 1973, the plaintiffs instituted a declaratory judgment action against the defendant at Civil Action No. 73–248. However, plaintiffs filed this action prior to the expiration of the ninety day written notice provision for the termination of the licensing agreement which was in effect between the parties based on said patent.

■ Accordingly, the plaintiffs filed a new complaint at Civil Action No. 73–698 based on the same patent on August 15, 1973, which date was subsequent to the expiration of the ninety day notice period for the termination of the licensing agreement. In order that no possible technical error could arise, plaintiffs filed a supplemental complaint at Civil Action No. 73–248 on September 10, 1973, in which all the allegations in the original complaint at Civil Action No. 73–248 were reaffirmed as well as an allegation that the ninety day period for the termination of the licensing agreement had expired.[1]

Prior to trial in this proceeding, by stipulation of the parties, all claims against the other parties involved, other than Amerola Corporation, were dismissed. The parties also entered into a stipulation, which the Court approved, consolidating Civil Action No. 73–698 with Civil Action No. 73–248 since in each and every particular the matters involved in each proceeding were the same.

The facts may be briefly stated. Anthony Merola was issued United States Letters Patent No. 3,079,030 on November 18, 1967. The patent involved the invention of a ball bat with certain physical characteristics, namely, an elongated

---

1. Civil Action No. 73–698 as well as the supplemental complaint in Civil Action No. 73–248 appeared to be an unnecessary precaution since a patent licensee can challenge the scope and validity of the underlying patent without first terminating its license agreement. *American Sterilizer Company v. Sybron Corporation,* 526 F.2d 542 (3rd Cir. 1975).

hollow metal body having substantially uniform weight per unit of length with sound-deadening means disposed in the open end.

The initial attempt to patent the metal ball bat was rejected by the examiner for obviousness as defined in 35 U.S. C.A., § 103.[2] However, the patent application was finally approved by the Patent Office after certain changes, the most important of which was to claim 1, which happens to be the only independent claim of the patent.[3]

■ The law is well settled that the presumption of the validity of a patent may be strengthened where the most pertinent prior art has been considered by the Patent Office. Conversely, where the applicable prior art has not been considered by the Patent Office, such presumption is greatly weakened. *Bolkcom v. Carborundum Company*, 523 F.2d 492 (6th Cir. 1975). A major factor contributing to the Patent Office's failure to consider applicable prior art is the fact that the Patent Office is too overworked to give adequate attention to patent applications and grants.

In the instant proceeding, the record clearly indicates that some of the most pertinent prior art relative to the patent application for a metal ball bat submitted by Anthony Merola was not considered by the Patent Office. It does not appear that the Patent Office considered the Taylor, et al Patent, United States Letters Patent No. 3,040,156, which discloses a hollow aluminum ball bat, the open ends of which may be plugged by any suitable closure. Nor does it appear that the Duke or Carpenter bats, which were in use prior to "Merola Patent" were considered by the Patent Office. The Duke bat was an aluminum ball bat manufactured during the

---

**2.** Anthony Merola's original claims were as follows:

"1. A ball bat comprising an elongated hollow metal body with a free end portion of one diameter tapering to a handle portion of reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion.

"2. The ball bat as defined in claim 1 wherein the hollow metal body has a substantially uniform weight per unit of length.

"3. The ball bat as defined in claim 1, wherein the wall thickness of the reduced diameter portion is approximately two times that of the free end portion.

"4. The ball bat as defined in claim 1, wherein the hollow metal body is of one-piece construction.

"5. The ball bat as defined in claim 1, wherein the elongated hollow metal body is open at the opposite ends thereof and including sound deadening closure means disposed within the hollows of the open ends.

"6. The ball bat as defined in claim 5 wherein the sound deadening means comprises rubberous plugs having a snug fit within the hollows of the open ends.

"7. The ball bat as defined in claim 6 wherein the rubberous plug at the handle portion end of the body is disposed in spaced relation to the terminal end of the handle portion, and a handle member having a knobbed end portion, and a generally cylindrical portion extending therefrom and into the space between the terminal end and the last named rubberous plug.

"8. The ball bat as in claim 6 wherein the plugs are tapered at their inner ends.

"9. The method of making a ball bat comprising

(a) providing a hollow metal open ended tube of substantially uniform wall thickness and diameter,

(b) applying compressive forces about the tube and along at least a portion of its length to form a hollow metal open ended body tapering from a first diameter portion to a reduced diameter portion, the reduced diameter portion having a wall thickness substantially greater than the first diameter portion, and

(c) applying sound deadening closure means to the open ends of the body so formed.

"10. The method as defined in claim 8 wherein the closure means are rubberous plugs, the inner walls of the body are coated with an adhesive and the rubberous plugs applied after coating with adhesive while rotating the plugs."

**3.** Claim 1 reads as follows:

"A ball bat comprising,

"(a) an elongated hollow metal body with a free end portion of one diameter tapering to a handle portion of reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion, the body being of seamless construction and having a substantially uniform weight per unit of length, the body being open at one end thereof, and

"(b) sound-deadening means disposed in the open end."

period 1958–1964 and was made from seamless hollow tubing shaped by the process of spinning with its hollow end closed with a mushroom-shaped metal plug. The Carpenter softball and fungo bats were manufactured and sold between 1939–1940 and were made from swaged aluminum tubing. In addition to having substantially uniform weight per unit of length, the hollow ends. of these aluminum bats were closed by inserting mushroom-shaped metal plugs which resulted in a natural deadening effect on sounds and vibrations.

The record further reveals that Anthony Merola had knowledge of this prior art but never disclosed the same to the Patent Office during his application or prosecution of his patent.[4]

■ In view of the above, the Court is of the considered opinion that no presumption of validity should be accorded to the "Merola Patent".

■ The paramount question before this Court is whether or not the Merola Patent is invalid because of obviousness as defined in 35 U.S.C.A., § 103? 35 U.S.C.A., § 103 provides in pertinent part: ". . : the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would be obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." Although the question of obviousness is one of law, the issue can be best determined in light of three factual inquiries: (1) the scope and content of the prior art; (2) the difference between the prior art and the claims at issue; (3) the level

of ordinary skill in the pertinent art. *Graham v. John Deere Company*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

Prior art has been defined as "the existing state of knowledge in a particular art at the time an invention is made. It includes the issued patents . . . publications, and all other knowledge determined to be common thereto such as trade skills, trade practices and the like." *Trio Processing Corporation v. L. Goldstein's Sons, Inc.*, 461 F.2d 66 (3rd Cir. 1972). In the instant patent proceeding some of the most pertinent prior art consists of (1) "swaging" which is a well known method of working and forming metal tubing which results in the maintenance of a substantially uniform weight per unit of length and the increased wall thickness in the reduced diameter portion of the metal tube; (2) "Alcoa aluminum ball bat" which was manufactured between 1934–1937 and which had its hollow open ends closed by mushroom shaped metal plugs; (3) "Carpenter Aluminum softball and fungo bats" which were made by the process of swaging and revealed an elongated hollow metal body with a free end portion of one diameter tapered to a handle portion of a reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion, the body being of seamless construction and having a substantially uniform weight per unit of length, the open end being closed by mushroom-shaped metal plugs; (4) the "Duke alumabat" manufactured from seamless hollow aluminum tubing into the customary shape of a bat by the

---

4. Anthony Merola received two letters, one from his attorney dated December 12, 1966 which stated:

"The relevancy of these bats is obvious but we consider patents 1611858 to Middlekauff and 23040156 to Taylor et al to be the closest art.

"Taylor et al discloses a bat comprising hollow aluminum tube tapered to the usual bat configuration and suggests, at Col. 2, lines 1–5, the plugging of the open ends of the bat and using sand or other suitable material to add weight."

The other letter dated August 11, 1966, was from W. B. Fleschsig, an Alcoa employee, who informed Mr. Merola of the existence of the Carpenter aluminum softball bats manufactured prior to World War II as well as the manufacture of aluminum bats by Hubbard Aluminum Products Company in 1957. Mr. Merola was informed that the Carpenter bats were manufactured from aluminum tubing, the open ends of which were closed with press fit end caps.

process of spinning, also revealed an elongated hollow metal body with a free end portion of one diameter tapered to a handle portion of reduced diameter, the reduced diameter having a wall thickness greater than the free end portion, the body being of seamless construction and having essentially the same weight ratios as that of the Carpenter bat, with the open ends closed by mushroom-shaped metal plugs; (5) "End plugs" of all material, wood, plastic, metal, and rubber, and of all shapes and sizes, used to close open ends of metal sporting products, such as ski poles, golf clubs, pool cues, baseball bats, and sky pole vaulting poles; (6) A pool cue manufactured and sold by the defendant, Amerola, and its predecessors since at least 1966 and consisted in part of a swaged aluminum tube filled with a mushroom rubber and/or plastic plug in the handle and club portion of the cue; (7) printed publications describing the Carpenter bat consisted of *The Wear-Ever News* of January 20, 1939, *Aluminum News Letter* of February 19, 1939, *Alcoa News* of February 20, 1939, *Forbes Magazine* of April 1, 1939, and the *Nation's Business Magazine* of March, 1939; (8) The "Middlekauff Patent", United States Letters Patent No. 1,611,858 which discloses a baseball bat made of steel, seamless tubing tapered to a customary bat configuration having the ends closed with caps which can be weighted to affect the balance characteristics of the bats; (9) "The Taylor, et al Patent," United States Letters Patent No. 2,340,156 which discloses a hollow aluminum ball bat, the open ends of which may be plugged by any suitable closure; and (10) "Gilbert Patent," United States Letters Patent No. 3,301,119 which discloses a drumstick made of swaged aluminum tubing so that the wall thickness of the body of the drumstick is graduated to an increased thickness as the outside diameter of the shoulder portion is reduced, so that each unit section of the length of the drumstick body is of identical weight to any other unit section.

■ The principal features of the "Merola Patent" are found in claim 1 which provides as follows:

"A ball bat comprising,

"(a) an elongated hollow metal body with a free end portion of one diameter tapering to a handle portion of reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion, the body being of seamless construction and having a substantially uniform weight per unit of length, the body being open at one end thereof, and

"(b) sound-deadening means disposed in the open end."

Certainly, the disclosures from the printed publications and products in use at the time of the alleged invention as well as from those patents, including the cited patents over which the patent was issued and several which were not cited, made the subject matter of the "Merola Patent" obvious.

The natural effect of swaging results in substantially uniform weight per unit of length as well as increased wall thickness in the reduced diameter portion of the metal tube being worked. As revealed by the prior art, this method had been used on many sporting products including, but not limited to, the Carpenter ball bat. With respect to the "Merola Patent's" use of rubberous plugs as sound-deadening means disposed in the open end, this too was revealed by the prior art. As the record indicates, the earlier ball bats had employed the use of metal plugs or caps where the Merola bat had used rubberous plugs in the open ends. Plugs or caps, whether they be wood, plastic, metal, or rubber, have a natural dampening effect on sounds and vibrations. Although a rubberous plug is a more effective dampener of sounds and vibrations, the change from a metal plug or cap to the rubber plug would have been obvious to one of ordinary skill in the art. Prior to the "Merola Patent" many metal sporting products had employed the use of rubberous

plugs. Even the defendant, Amerola Products Corporation, and its predecessor, manufactured and sold an aluminum pool cue since at least 1966 which consisted in part of a swaged aluminum tube filled with a mushroom rubber and/or plastic plug in the handle and club portion of the cue.

The Court is of the firm belief that departures by the inventor, Anthony Merola, from the prior art were not innovative enough to constitute a valid patent. In considering cases dealing with inventions that combine elements that were known as prior art, the Supreme Court has developed some specialized criteria for obviousness. In *Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corporation*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1952), the Court held that the "concept of invention is inherently elusive when applied to combinations of old elements." A claimed invention is not patentable if it is a mere aggregation of old elements assembled with only mechanical skill. In order to be patentable a combination must produce a new or different function. Juxtapositioning the prior art, both considered and nonconsidered, with the patent in suit, this Court can only find an amalgam of known elements. The combination reveals nothing new, surprising or novel, nor is a new function created or a useful addition of knowledge taught to the prior art.

The "Merola Patent" is therefore invalid as being obvious to one of ordinary skill in the art under the provisions of 35 U.S.C.A., § 103. Since the patent is invalid, it is unnecessary to reach the other issues of validity and infringement and therefore the only remaining issue is whether plaintiffs are entitled to reasonable attorney fees under 35 U.S.C.A., § 285.[5] The determination of whether or not an action is an "exceptional case" within the meaning of 35 U.S.C.A., § 285, is a matter for the sound discretion of the trial Court.

*Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 484 F.2d 905 (7th Cir. 1973). It is the considered opinion of this Court that an award of attorney fees would be improper as this is not an exceptional case within the meaning of 35 U.S.C.A., § 285. Very simply, the Court is not convinced that Mr. Merola did not have a bonafide belief in the validity of his patent and therefore no reasonable attorney fees should be awarded to plaintiff. See: *Indiana General Corp. v. Krystinel Corp.*, 421 F.2d 1023 (2nd Cir. 1970).

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

---

**5.** 35 U.S.C.A., § 285 provides in pertinent part:
"The Court in exceptional cases may award reasonable attorney fees to the prevailing party."