552 F.2d 1020
 194 U.S.P.Q. 1
 ALUMINUM COMPANY OF AMERICA, a corporation, and Alcoa Sport
Products Company, a corporation
v.
AMEROLA PRODUCTS CORPORATION, a corporation, et al.
ALUMINUM COMPANY OF AMERICA, a corporation, and Alcoa Sport
Products Company, a corporation
v.
AMEROLA PRODUCTS CORPORATION, a corporation, Appellant.
 No. 76-1729.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 13, 1977.
Decided April 8, 1977.
 
 Edward F. Welsh, William G. Kratz, Jr., Parmelee, Miller, Welsh & Kratz, Pittsburgh, Pa., for appellant.
 Cloyd R. Mellott, C. Arthur Wilson, Jr., J. W. Montgomery, III, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellees.
 Before ROSENN and HUNTER, Circuit Judges, and COOLAHAN, District Judge.*
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 Although the game of baseball has had its memorable innings with the law over the years,[1] this is apparently the first action in which bats rather than players have generated the litigation. The appellees, Aluminum Company of America and its subsidiary, Alcoa Sport Products Corporation (hereinafter referred to collectively as "Alcoa"), brought an action against Amerola Products Corporation ("Amerola") seeking a declaration of the invalidity, noninfringement, and unenforceability of Amerola's patent on a metal ball bat ("the Amerola patent").[2] The district court decided that the patent was obvious in view of the prior art, and therefore invalid under 35 U.S.C. § 103 (1970).[3] Aluminum Co. of America v. Amerola Products Corp., 408 F.Supp. 1352 (W.D.Pa.1976). On this appeal, Amerola mounts several challenges to the district court's determination of obviousness. We affirm.
 
 I.
 
 2
 The patent in suit consists of six claims and pertains to a ball bat with certain physical characteristics. The first claim describes a bat comprising a seamless, elongated, hollow metal body having a substantially uniform weight per unit of length with sound-deadening means disposed in the larger, open end.[4] Claims 2 and 3 cover the bat disclosed in Claim 1, with the additional specifications that the metal is aluminum and the sound-deadening means is a "rubberous plug." The fourth claim describes the bat defined in the first, "wherein both ends are open and wherein sound-deadening means are disposed in both the free end portion and the handle portion"; Claim 5 covers the bat disclosed in Claim 4, with the further specification that the sound-deadening means consists of rubberous plugs. The sixth claim defines the bat in Claim 5 "wherein the rubberous plug at the handle portion of the body is disposed in spaced relation to the terminal end of the handle portion, and further comprising a handle member having a knobbed end portion . . .."
 
 
 3
 In its inquiry into the obviousness vel non of the Amerola patent, the district court noted the Supreme Court's definitive interpretation of 35 U.S.C. § 103 in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Graham enumerated the factual inquiries that underlie the determination of obviousness. First, the scope and content of the prior art are to be discerned; second, the differences between the prior art and the claims at issue are to be ascertained; and third, the level of ordinary skill in the art must be resolved. In addition, the Supreme Court said, "(s)uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." Id. at 17-18, 86 S.Ct. at 694.
 
 
 4
 The district court in the instant case commenced its execution of the Graham analysis by identifying ten items of the most pertinent prior art. Those items included (1) "swaging," a well known method of forming metal tubing which results in substantially uniform weight per unit of length and increased wall thickness in the reduced diameter portion of the metal tube; (2) an Alcoa aluminum ball bat manufactured between 1934 and 1937 in which the hollow open ends were closed by mushroom-shaped metal plugs; (3) Carpenter aluminum softball and fungo bats, which were made by the process of swaging and consisted of a seamless, elongated, hollow metal body of substantially uniform weight per unit of length, with a free end portion of one diameter tapered to a handle portion of reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion, and with the open ends being closed by mushroom-shaped metal plugs; (4) "Duke Alumabats," which were made by the process of spinning and consisted of a seamless, elongated, hollow metal body of substantially uniform weight per unit of length, with a free end portion of one diameter tapered to a handle portion of reduced diameter, the reduced diameter having a wall thickness greater than the free end portion, and with the open ends closed by mushroom-shaped metal plugs; (5) "end plugs" of all materials wood, plastic, metal, and rubber and of all shapes and sizes, used to close open ends of metal sporting products such as pool cues, ski poles, baseball bats, golf clubs, and pole vaulting poles; (6) a pool cue manufactured and sold by Amerola and its predecessors since at least 1966, consisting in part of a swaged aluminum tube fitted with a mushroom-shaped rubber and/or plastic plug in the handle portion of the cue; (7) certain printed publications describing the Carpenter bat; (8) the "Middlekauff patent," United States Letters Patent No. 1,611,868, which discloses a baseball bat made of seamless steel tubing tapered to a customary bat configuration, with the ends closed by caps that can be weighted to affect the balance characteristics of the bat; (9) the "Taylor, et al. patent," United States Letters Patent No. 2,340,156, which discloses a hollow aluminum ball bat, the open ends of which may be plugged by any suitable closure; and (10) the "Gilbert patent," United States Letters Patent No. 3,301,119, which discloses a drumstick made of swaged aluminum tubing with a wall thickness in the body of the tubing graduated to an increased thickness as the outside diameter of the shoulder portion is reduced, so that each unit section of the length of the drumstick body is of identical weight to any other unit section. 408 F.Supp. at 1355-56.
 
 
 5
 Having identified the most pertinent art, the district court proceeded to compare that art with the Amerola patent. The court observed that the process of swaging naturally results in a substantially uniform weight per unit of length and in increased wall thickness in the reduced diameter portion of the metal tube being worked; these characteristics of the Amerola bat, the court said, had been revealed in many sporting products made prior to the alleged invention, including, but not limited to, the Carpenter bat. The use of rubberous plugs as disclosed in Claim 3 of the Amerola patent was, according to the district court, not a significant development:
 
 
 6
 As the record indicates, the earlier ball bats had employed the use of metal plugs or caps where the (Amerola) bat . . . used rubberous plugs in the open ends. Plugs or caps, whether they be wood, plastic, metal, or rubber, have a natural dampening effect on sounds and vibrations. . . . Prior to the (Amerola patent) many metal sporting products had employed the use of rubberous plugs. Even the defendant, Amerola Products Corporation, and its predecessor, manufactured and sold an aluminum pool cue since at least 1966 which consisted in part of a swaged aluminum tube (fitted) with a mushroom rubber and/or plastic plug . . . .
 
 
 7
 408 F.Supp. at 1356-57. The district court concluded that the Amerola patent was merely a combination of known elements with no change in their respective functions, an aggregation demonstrating only mechanical skill, not invention,[5] and achieving no synergistic result. Therefore, the district court held, under the guidelines laid down in Graham v. John Deere Co., supra, and cases dealing with the obviousness of combination patents, e. g., Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1952), the Amerola patent was invalid as being obvious to a person of ordinary skill in the art.
 
 
 8
 In the course of its opinion, the district court noted that "some of the most pertinent prior art relative to the . . . application" for the patent in suit was not considered by the Patent Office. 408 F.Supp. at 1354. Specifically, neither the Taylor, et al. patent, nor the Carpenter bat, nor the Duke Alumabat was cited by the patent examiner.[6] For this reason, the court determined that the statutory presumption of validity, 35 U.S.C. § 282 (1970), should not be accorded to the Amerola patent.
 
 
 9
 On this appeal, Amerola raises two basic issues. First, Amerola contends that the district court erred in holding that its patent was entitled to no presumption of validity. Second, Amerola asserts that the district court's "subjective" determination of obviousness is fatally undercut by evidence that when Alcoa produced a few metal bats in 1966, those bats were substantially identical to prior metal-plugged bats manufactured by Alcoa, Carpenter, and Duke. If the patented rubber-plugged bat was in fact obvious, Amerola argues, Alcoa, being skilled in the art, would have developed such a bat in 1966 rather than producing the bat that it did.
 
 II.
 
 10
 Normally, the starting point in analyzing a challenge to the validity of a patent is the presumption that the patent is valid, with the burden of demonstrating invalidity by clear and convincing proof resting on the party asserting it. 35 U.S.C. § 282 (1970); Tokyo Shibaura Electric Co. v. Zenith Radio Corp., 548 F.2d 88, 93 (3d Cir. 1977); Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Co., 546 F.2d 530, 540 (3d Cir. 1976). We have recently reiterated the principle that where the pertinent prior art invoked to invalidate a patent has been considered by the Patent Office, the presumption of validity is often strengthened. Tokyo Shibaura Electric Co., supra, 548 F.2d at 93 n. 14; Universal Athletic Sales Co., supra, 546 F.2d at 540 n. 28. But we have indicated previously that the converse of that principle is also true that when relevant prior art has not been considered by the Patent Office, the presumption of validity is weakened or overcome. Philips Electronic & Pharmaceutical Industries Corp. v. Thermal & Electronics Industries, Inc., 450 F.2d 1164, 1176 (3d Cir. 1971); see Layne-New York Co. v. Allied Asphalt Co., 501 F.2d 405, 407 (3d Cir. 1974), cert. denied, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); U. S. Expansion Bolt Co. v. Jordan Industries, Inc., 488 F.2d 566, 568 (3d Cir. 1973); Hadco Products, Inc. v. Walter Kidde & Co., 462 F.2d 1265, 1272 n. 33 (3d Cir.), cert. denied, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972).[7] In the latter situation, when relevant prior art has not been considered, the degree by which the presumption is weakened depends on a balancing of the pertinence of the newly cited art against the pertinence of the art actually considered by the Patent Office. Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193, 1196 (6th Cir. 1974).
 
 
 11
 In the instant case, the district court determined that three items of prior art not considered by the Patent Office the Taylor, et al. patent and the Carpenter and Duke bats constituted "some of the most pertinent prior art relative to the patent application." 408 F.Supp. at 1354 (emphasis added). We cannot say that this finding of fact was clearly erroneous.[8] Nor can we say that the unconsidered items were merely cumulative of the references cited by the patent examiner. See Saf-Gard Products, Inc. v. Service Parts, Inc., 532 F.2d 1266, 1271 (9th Cir. 1976), cert. denied, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976); Schnadig Corp. v. Service Parts, Inc.,494 F.2d 383, 391 (6th Cir. 1974); note 6 supra. On the contrary, it appears to us that the concepts embodied in the uncited pertinent art added significantly to the disclosures contained in the cited references, and justified the district court's conclusion that the presumption of validity had been overcome or destroyed.[9]
 
 III.
 
 12
 Amerola contends that the district court's determination of obviousness is undermined by uncontradicted evidence that in 1966 Alcoa produced aluminum bats with metal plugs, much like the bats produced in earlier years by Carpenter, Duke, and by Alcoa itself. The district court's subjective inquiry into what would have been obvious to a hypothetical artisan of ordinary skill was, Amerola maintains, unnecessary as well as misguided in light of objective evidence that Alcoa, being skilled in the art, failed to produce the bat disclosed in the claims of the Amerola patent.
 
 
 13
 We recently considered virtually the same argument in Tokyo Shibaura Electric Co., supra. In that case, the appellant, Zenith Radio Corporation, asserted that if its patented concept of color television picture tube design was in fact obvious, as the district court had concluded, then the same idea would have occurred to someone else. We rejected that argument:
 
 
 14
 Zenith would have us treat the failure of others to conceive the patented tube design as a primary and preclusive determinant of nonobviousness. In Graham v. John Deere Co., however, the Supreme Court characterized failure of others, commercial success, and long felt but unsolved needs as "secondary considerations" which "might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness," said the Court, "these inquiries may have relevancy." 383 U.S. at 17-18, 86 S.Ct. 684, 694 (emphasis added). We have previously stated that these secondary considerations are entitled to "only measured weight" in adjudging obviousness, U. S. Expansion Bolt Co. v. Jordan Industries, Inc., 488 F.2d 566, 572 (3d Cir. 1973); Frank W. Egan & Co. v. Modern Plastic Machinery Corp., 387 F.2d 319, 327 (3d Cir. 1967), cert. denied, 391 U.S. 966, 88 S.Ct. 2036, 20 L.Ed.2d 879 (1968), and that they cannot, by themselves, support a finding of nonobviousness if it is otherwise established that a patent's disclosures are obvious in light of the prior art. Continental Can Co. v. Crown Cork & Seal Co., 415 F.2d 601, 602 (3d Cir. 1969), cert. denied, 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970).
 
 
 15
 Id., 548 F.2d at 94 (footnote omitted). We decided that on the facts of that case, the failure of others was not conclusive evidence of nonobviousness, and that the primary indicators of obviousness enumerated in Graham the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art provided other, weightier evidence that Zenith's patent would have been obvious to a person of ordinary skill in the art. Id., at 95.
 
 
 16
 Our review of the record in the instant case likewise convinces us that the secondary evidence of Alcoa's failure to develop the patented Amerola bat did not alter the determination of obviousness resulting from the three primary factual inquiries.[10] There are two important reasons why Alcoa's experience cannot bear the weight that Amerola seeks to place on it. First, the record does not show that in 1966 Alcoa was attempting to perfect an aluminum bat for mass production. Rather, the evidence shows that Alcoa produced only a limited number of bats to promote the use of aluminum in the consumer durable goods industry. Second, Alcoa's designers may not have been familiar with all of the pertinent prior art on which the district court relied to support its conclusion that the Amerola patent was obvious. In determining whether a patented device would have been obvious to a person of ordinary skill in the art, however, a court must assume that the hypothetical artisan had knowledge of all the prior art disclosed at the time of the invention, regardless of whether anyone actually possessed such all-encompassing familiarity with the art. Tokyo Shibaura Electric Co., supra, 548 F.2d at 94 n. 18; Layne-New York Co. v. Allied Asphalt Co., supra, 501 F.2d at 406. Cf. Dann v. Johnston, 425 U.S. 219, 229, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976).
 
 
 17
 We conclude that the evidence fully supports the district court's conclusion that the Amerola patent[11] simply arranged old elements, with each performing the function it had been known to perform, and that the resulting combination was not an invention under the obvious-nonobvious standard. See Sakraida v. Ag Pro, Inc., supra, 425 U.S. at 282, 96 S.Ct. 1532; Anderson's-Black Rock, Inc. v Pavement Salvage Co., 396 U.S. 57, 61-63, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).
 
 IV.
 
 18
 The judgment of the district court will be affirmed.
 
 
 
 *
 James A. Coolahan, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 E.g., Flood v. Kuhn, 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972); Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953); Federal Baseball Club v. National League, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898 (1922); Philadelphia Ball Club, Ltd. v. Lajoie, 202 Pa. 210, 51 A. 973 (1902). See generally Comment, The Common Law Origins of the Infield Fly Rule, 123 U.Pa.L.Rev. 1474 (1975)
 
 
 [2]
 United States Letters Patent No. 3,479,030. The patent was issued to Anthony Merola on November 18, 1967. By virtue of an assignment, Amerola acquired the entire right, title, and interest in the patent
 Amerola counterclaimed, alleging that bats manufactured by Alcoa infringed the Amerola patent, but the district court found it unnecessary to reach that issue.
 
 
 [3]
 35 U.S.C. § 103 (1970) provides:
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title (relating to novelty), if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
 
 
 [4]
 In the words of the patent, the claim describes a ball bat comprising
 (a) an elongated hollow metal body with a free end portion of one diameter tapering to a handle portion of reduced diameter, the reduced diameter portion having a wall thickness greater than the wall thickness of the free end portion, the body being of seamless construction and having a substantially uniform weight per unit of length, the body being open at one end thereof, and
 (b) sound-deadening means disposed in the open end.
 
 
 [5]
 Under Hotchkiss v. Greenwood, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851), "the work of the skillful mechanic," as opposed to that of the inventor, is not patentable. The Supreme Court has said that 35 U.S.C. § 103 codifies the Hotchkiss principle. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Sakraida v. Ag Pro, Inc., 425 U.S. 273, 279, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976)
 
 
 [6]
 The references cited by the examiner were a patent issued in 1887 to J. W. Sherwood (United States Letters Patent No. 364,680), disclosing a billiard cue; a patent issued in 1922 to W. A. Shroyer (United States Letters Patent No. 1,499,128), disclosing a metal baseball bat; and a patent issued to L. Middlekauff in 1923 (United States Letters Patent No. 1,611,858), disclosing a steel bat
 
 
 [7]
 Accord, Azoplate Corp. v. Silverlith, 367 F.Supp. 711, 717 (D.Del.1973) ("The presumption of the validity of a patent . . . is weakened or destroyed where important portions of the prior art have not been discovered or analyzed."), aff'd mem., 506 F.2d 1050 (3d Cir. 1974), cert. denied, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); Anchor Plastics Co. v. Dynex Industrial Plastics Corp., 363 F.Supp. 582, 588 (D.N.J.1973) ("(T)he presumption of validity does not exist if . . . there is shown to have been appropriate prior art references which were not considered by the Patent Office."), aff'd mem., 492 F.2d 1238 (3d Cir.), cert. denied, 417 U.S. 955, 94 S.Ct. 3083, 41 L.Ed.2d 674 (1974); Mueller Brass Co. v. Reading Industries, Inc., 352 F.Supp. 1357, 1366 (E.D.Pa.1972) ("(I)f the best prior art was not before the patent examiner when the patent was approved, (the) presumption is greatly weakened."), aff'd mem., 487 F.2d 1395 (3d Cir. 1973)
 
 
 [8]
 The pertinence of an item of prior art to the patent in suit is a factual determination reviewable under the clearly erroneous standard of Fed.R.Civ.P. 52(a). Tokyo Shibaura Elec. Co., supra, 548 F.2d at 93: "The ultimate determination of patent validity is a conclusion of law reviewable for error but the resolution of the obviousness issue depends on several basic factual inquiries reviewable under the 'clearly erroneous' standard of Fed.R.Civ.P. 52(a)." See Sakaraida v. Ag Pro, Inc., supra, 425 U.S. at 280, 96 S.Ct. 1532; Graham v. John Deere Co., supra, 383 U.S. at 17, 86 S.Ct. 684
 
 
 [9]
 The district court said that the patent in this case was entitled to no presumption of validity. We believe it more accurate, and more consistent with the relevant section of the patent statute, 35 U.S.C. § 282 (1970), to say that the presumption was overcome or destroyed by the uncited but highly pertinent prior art. Regardless of the terminology employed, of course, the result in this case is the same
 Amerola urges, in opposition to the district court's finding, that the Taylor patent was actually considered by the Patent Office because it was classified in a subclass searched by the examiner prior to issuance of the Amerola patent. See generally, Canaan Products, Inc. v. Edward Don & Co., 388 F.2d 540, 544-45 (7th Cir. 1968). We need not decide what effect classification of an uncited item in a searched subclass has on the presumption of validity. Even assuming the Taylor patent to have been considered, the Carpenter and Duke bats, which Amerola does not dispute were not considered by the Patent Office, add important refinements to the disclosures of the Taylor patent. The Carpenter and Duke bats, like the Amerola bat, had substantially uniform weight per unit of length, with the reduced diameter of the handle portion having a wall thickness greater than the free end portion. The Taylor patent does not include these specifications. Furthermore, the Carpenter bats, like the Amerola bat and unlike the Taylor bat, were made by the process of swaging. The fact remains, then, that some of the most pertinent, non-cumulative prior art was not considered by the Patent Office.
 
 
 [10]
 As we have noted above, the district court defined the scope and content of the prior art by listing the ten most pertinent items of prior art, and then proceeded to highlight the differences between the prior art and the patent in suit. In this case, as in Trio Process Corp. v. L. Goldstein's Sons, Inc., 461 F.2d 66, 71 (3d Cir.), cert. denied, 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972), it would have been preferable for the trial judge to have set forth his findings with regard to the ordinary level of skill in the art with greater specificity, but the findings actually made indicate that an ordinary person skilled in the art of designing metal sporting products, see 408 F.Supp. at 1356, would be aware of the use to which rubber plugs could be put in aluminum bats. In any event, Amerola does not contend in this court that the district court misdefined the pertinent art, or that the district court considered references that were not among the art to which a person of ordinary skill in the pertinent art would have looked
 
 
 [11]
 Amerola also asserts that the district court's decision is defective because the court did not enter a specific finding of invalidity for each claim of the patent. More specifically, Amerola contends that Claim 3 of the patent, which defined the combination of a metal ball bat with a rubberous end plug, could not have been obvious because that combination did not exist in the prior art
 It is perfectly clear from its opinion that the district court found every claim of the Amerola patent invalid for obviousness, including Claim 3. See 408 F.Supp. at 1356 ("(T)he change from a metal plug or cap to a rubber one would have been obvious to one of ordinary skill in the art.") And Amerola's suggestion that the absence of its combination from the prior art proves nonobviousness is unacceptable for two reasons. First, such a rule would make the failure of others a primary and preclusive determinant of nonobviousness, contrary to Graham v. John Deere Co., supra. Second, the suggestion blurs the distinctions between the statutory requirements of novelty and nonobviousness. See Tokyo Shibaura Elec. Co., supra, 548 F.2d at 95 n. 21.