506 F.Supp. 1072 (1981)
CONTICO INTERNATIONAL, INC., Plaintiff,
v.
RUBBERMAID COMMERCIAL PRODUCTS, INC., Defendant.
No. 79-702C(A).
United States District Court, E. D. Missouri, E. D.
January 2, 1981.
*1073 Ralph W. Kalish, Kalish & Gilster, St. Louis, Mo., for plaintiff.
John K. Roedel, Jr., Senninger, Powers, Leavitt & Roedel, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiff brought this action against defendant in a single count, seeking a declaratory judgment that United States Design Letters Patent Number 251,833 (hereinafter referred to as 833) is unenforceable or that said patent is not infringed by certain dollies manufactured and sold by plaintiff. Additionally, plaintiff prays that defendant be enjoined from threatening or filing civil actions for infringement of 833 against plaintiff, its customers, or third parties, and that plaintiff be awarded its costs and reasonable attorney's fees incurred in this action.
Defendant has counterclaimed, praying for a declaratory judgment that 833 is valid and that it is infringed by plaintiff's alleged imitation dolly. Defendant also seeks appropriate injunctive relief under 35 U.S.C. 283, and award of damages under 35 U.S.C. 284, and an award of attorney's fees and costs.
Jurisdiction is proper under 28 U.S.C. 1338(a) and 28 U.S.C. 2201. By order of this Court on August 21, 1979, the issue of the patent invalidity of 833 as alleged in plaintiff's complaint and the issue of the infringement of 833 by the plaintiff as alleged in defendant's counterclaim, were tried separately from and prior to issues of damages.
*1074 The pleadings, exhibits, stipulations and credible testimony disclose that plaintiff is a corporation duly organized and existing under Missouri law, and that plaintiff is doing business as Continental Manufacturing Company, with its principal office and place of business in St. Louis County, Missouri. Defendant is a corporation organized and existing under Delaware law, with its principal office and place of business at Winchester, Virginia. The parties compete in the sale of industrial, institutional and sanitation products.
On August 22, 1977, Dale T. Maza and Glen E. Tomblin, employees of the defendant, applied for a design patent entitled "Dolly for Refuse Container." The inventors claimed an ornamental design for a dolly as shown in three figures in Plaintiff's Exhibit 1 (consisting of three pages), copy of which exhibit is attached hereto and made a part of this opinion. Their invention was designed for use with defendant's "Brute" line of 20-gallon, 32-gallon and 44-gallon containers.
Defendant's first order for a commercial version of this invention came on February 10, 1978. Subsequently, plaintiff obtained a copy of defendant's commercial dolly and used it as a model to design its own dolly to compete with defendant. Plaintiff introduced its commercial dolly in August, 1978.
On May 15, 1979, Patent 833 issued to defendant as assignee from inventors Maza and Tomblin. On June 5, 1979, defendant notified plaintiff that it found plaintiff's commercial dolly to infringe 833. This lawsuit followed.
Plaintiff challenges the validity of 833 on the grounds that Maza and Tomblin failed to disclose prior art in applying for 833, that 833 is a functional rather than ornamental design, that 833 is concealed in normal use, and that 833 is obvious in view of prior art. Assuming that 833 is valid, plaintiff argues that its commercial dolly does not infringe 833.
Patents enjoy a strong presumption of validity under 35 U.S.C. 282. In E. I. DuPont de Nemours v. Berkley & Co., 620 F.2d 1247, 1266 n. 30 (8th Cir. 1980), the Court said:
"The mandate of section 282 is twofold, requiring `that a party asserting invalidity bear not only the presumption-generated burden of going forward with proof but also the burden of persuasion on that issue.' The latter burden remains upon the party asserting invalidity whether relevant prior art was or was not considered by the examiner during prosecution of the patent application before the PTO. The presumption is fully rebutted only when the party asserting invalidity meets the burden of persuasion, i. e., relies on evidence that does in truth render the claimed invention invalid, though rebuttal may be easier when the prior art relied on is more relevant than that considered by the examiner." (Citations omitted.)
In the Eighth Circuit one who challenges application of this presumption must defeat it by "substantial evidence." Clark Equipment v. Keller, 570 F.2d 778, 795 (8th Cir.), cert. denied 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978); Woodstream Corp. v. Herter's, Inc., 446 F.2d 1143, 1149 n. 4 (8th Cir. 1971).
This presumption is weakened, if not completely destroyed, by proof that the patent applicants inequitably withheld pertinent prior art from consideration by the Patent Office. Ralston Purina v. General Foods, 442 F.2d 389, 390 (8th Cir. 1971); Norton v. Curtiss, 433 F.2d 779 (C.C.P.A. 1970); American Infra-Red Radiant v. Lambert Industries, 360 F.2d 977, 989 (8th Cir. 1966).
The Eighth Circuit further said in E. I. DuPont de Nemours, supra, at 1274:
"This circuit has recognized that inequitable conduct short of fraud can be a defense in a patent infringement suit. To make out a case of inequitable conduct Berkley must prove, by `clear, unequivocal and convincing evidence,' that DuPont's conduct made it impossible for the PTO to fairly assess the patent application against the prevailing statutory criteria, and that it involved `some element *1075 of wrongfulness, willfulness or bad faith.' If the information be irrelevant, its innocent or negligent misrepresentation or non-disclosure, whether or not intentional, does not amount to inequitable conduct." (Citations omitted.)
The Court finds that plaintiff has not established by "substantial evidence" that the applicants for 833 withheld relevant evidence of prior art. At the trial plaintiff produced several examples of alleged prior pertinent art[1] and an expert witness, Frank Roth, who testified that they were similar to 833 from a visual design perspective. However, defendant countered with its own expert, Bernard McDermott, who testified that only one of plaintiff's cited patents could aid design of 833, and that patent, Swedish Patent No. 154,659, was independently discovered and considered by the Patent Office examiner in determining the claim. The Court relies on McDermott inasmuch as Roth testified to the similarity of the cited patents to particular features of 833 (the raised central cylinder, the side skirt, the wheel wells, and the rib structure), while "it is the appearance of the article taken as a whole which must meet the statutory requirements * * *." Clark Equipment, 570 F.2d at 799.
Plaintiff contends that since the application for United States Patent No. 3,512,740 was prosecuted by the same counsel who prosecuted the application for 833, the Court should infer intentional withholding of at least this knowledge from the Patent Office. While the Court is disturbed that the applicants for 833 made no disclosure of prior art, this fact has no legal import until plaintiff establishes the relevancy of art withheld to 833. E. I. DuPont de Nemours, supra. Based on the record before it, this Court finds that no prior art relevant to 833 was withheld from the Patent Office, and, accordingly, the Court finds that the presumption of validity under 35 U.S.C. 282 is applicable.
Plaintiff contends that 833 is not "ornamental" under 35 U.S.C. 171. The ornamental quality of a design was discussed in Gorham Co. v. White, 81 U.S. 511, 14 Wall. 511, 20 L.Ed. 731 (1871), which noted that "the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." 81 U.S. at 525, 14 Wall. at 525. More recently, the Third Circuit found that "[t]o be ornamental the configuration must be designed for aesthetic appeal rather than dictated primarily by functional requirements, and the design as a whole must produce a pleasing impression on the aesthetic sense of the ordinary observer." Rains v. Cascade Industries, 402 F.2d 241, 247 (3rd Cir. 1968).
Based on the evidence before it, this Court finds that 833 possesses aesthetic appeal and that it produces a pleasing impression on the aesthetic sense of the ordinary observer. 833 has no harsh metal edges, no unsightly plates or bars, and no rough-cut, fragmented image prominent in older dollies. 833 does have softly accentuated characteristics, five casters, and unitary, futuristic form which distinguishes it from the industrial products shown on the record.
Inasmuch as the record shows many devices of different shape and size which performed the same task as 833, the Court cannot unequivocally state that its design was dictated primarily by function. Plaintiff strenuously argues that various features of 833 are functionally dictated, but this Court notes that the proper focus of inquiry is upon appearance as a whole, not piecemeal, Clark Equipment, Rains, and that plaintiff's evidence on the subject went not unchallenged. Accordingly, the Court finds that 833 has "ornamental" qualities within the meaning of 35 U.S.C. 171.
Both parties devoted great effort to retracing the steps made by Maza and Tomblin in designing 833. While such evidence may be relevant, the Court does not place great reliance upon it.
*1076 In Gorham Co., 81 U.S. at 525-6, 14 Wall. at 525-6, the Court said:
"Manifestly the mode in which those appearances are produced has very little, if anything, to do with giving increased salableness to the article. It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly, but, in whatever way produced, it is the new thing, or product, which the patent law regards. To speak of the invention as a combination or process, or to treat it as such, is to overlook its peculiarities. As the acts of Congress embrace only designs applied, or to be applied, they must refer to finished products of invention rather than to the process of finishing them, or to the agencies by which they are developed. A patent for a product is a distinct thing from a patent for the elements entering into it, or for the ingredients of which it is composed, or for the combination that causes it. We do not say that in determining whether two designs are substantially the same, differences in the lines, the configuration, or the modes by which the aspects they exhibit are not to be considered; but we think the controlling consideration is the resultant effect."
Assuming this evidence is important, it does not change the Court's finding of "ornamental" qualities in 833.
The Court considers Maza's notes to be the best evidence of the inventors' present sense consideration during development, and by all accounts they show aesthetic concern. Defendant's employees stressed that after deciding to convert dolly construction completely to plastic, their primary concern was imparting a visual image of strength to consumers. Maza stressed that he and Tomblin developed 833 as it appeared unconnected to a barrel; it took circular shape because Maza felt that this caused a good visual relationship with the container, and it received five casters because Maza recalled European design custom with respect to office swivel chairs. In spite of the fact that in internal memoranda defendant's management recognized only a functional problem in the "Brute" dolly interface, defendant's aesthetic concerns were inherent in its assignment of this project to both an industrial designer and an engineer. Plaintiff's aforementioned evidence that various features of 833 had functional qualities is reduced to second guessing in light of uncontroverted testimony by Maza and Tomblin of their present sense thoughts and Maza's notes. Accordingly, assuming evidence of an inventor's motivation is important evidence of "ornamental" design under 35 U.S.C. 171, this Court is convinced that aesthetics were a primary motivating force behind 833.
Plaintiff contends that because 833 is partially hidden while attached to the bottom of a container, it is ineligible for patent protection. Defendant counters that 833 is ineligible for protection only if it is concealed in all usages.
It is well established that a design patent cannot protect an item concealed in normal use. In re Cornwall, 230 F.2d 457, 459 (C.C.P.A.1956); In re Stevens, 173 F.2d 1015, 1016 (C.C.P.A.1949). There was no direct evidence of normal usage of the dolly and "Brute" containers in industry. The record showed, however, that 833 was developed with substantial concern for the dolly's interface with "Brute" containers, and that for this reason it featured a broken thread mechanism for easy and frequent attachment to and detachment from a container. Inasmuch as defendant's sales literature and the testimony of a sanitary supply retailer showed that "Brute" dollies are typically sold with emphasis on their functional qualities, the Court finds that normal usage of defendant's commercial dolly entails frequent attachment to and detachment from "Brute" containers and, accordingly, that said dolly is not concealed in normal use.
*1077 Plaintiff contends that defendant conceded during discovery that the dolly's ornamental features were hidden while in normal use. Plaintiff's Interrogatory Number 16(b) asked defendant to identify each ornamental feature of its commercial dolly which "can ornamentally be seen" when the dolly is actually supporting a container. Plaintiff misinterprets defendant's response.
Defendant stated not, as counsel contends, that "[t]here is no relevance to the ornamental nature of the dolly as it is being used," but that "[w]hile there is no relevance to the ornamental nature of the dolly as it is being used, all features visible when displayed or offered for sale are ornamental." The Court understands defendant to contend that the relevant time of visibility is when the dolly is "displayed or offered for sale," and to implicitly question the relevance of the dolly's appearance while supporting a container. Defendant clearly does not concede the non-appearance of 833's ornamental features for all purposes. Furthermore, plaintiff's question presumes that normal use relative to patent protection is in support of a container, and such is not what the record shows. Thus, even if defendant did concede that the dolly was hidden while supporting a container, it did not concede that it was hidden in "normal" use. Accordingly, the Court does not find that defendant's response to the interrogatory concedes that the dolly is hidden in "normal" use as determined by this Court.
Plaintiff contends that 833 is invalid for being obvious in view of prior art under 35 U.S.C. 103. The Supreme Court set out strict standards for the Court's inquiry under 35 U.S.C. 103 in Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and said at 17-18:
"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."
These standards are to be applied on a case-by-case basis. Woodstream Corp., supra, at 1150.
The record before the Court shows that prior art included dollies manufactured and sold by defendant from 1971 through 1973 and commencing in 1974, and certain patents related generally to devices for the transport of carpet, barrels, buckets, etc. These patents and dollies consisted specifically of the following:
(a) Swedish Patent No. 154,659 ("Device for unrolling a carpet from a roller"): A round plate upon which a tapered stud is mounted in the center to receive a carpet roll; six casters are mounted at equal intervals along the edge of the underside;
(b) U. S. Patent No. 926,288 ("Barrel-Truck"): A round plate with raised circular perimeter adapted for receipt of a barrel by means of fit with the end of the barrel and short hooks extending from the raised perimeter; four casters are mounted at equal intervals to the underside;
(c) U. S. Patent No. 1,328,458 ("Bucket"): A bucket designed to attach to a doughnut-shaped band by means of fit and spring-controlled latch rods; three casters are mounted to the band;
(d) U. S. Patent No. 2,740,981 ("Wheeled Carrier For Suction Cleaners and the Like"): A round platform which attached to suction cleaners, etc., by means of fit, a resilient cushion on its top face, and spring arm clamps; four casters are mounted to the platform underside;
(e) U. S. Patent No. 3,512,740 ("Hold-Down Plug and Socket Construction"): A plug, to be mounted to a supporting surface, which forms a plug-and-socket fit with the bottom of a receptacle by means of reduced peripheral portions (grooves) in which an O-ring is fitted;

*1078 (f) U. S. Patent No. 3,734,527 ("Bucket Chassis"): A small circular plate from which four arms extend at quarterly intervals, each of which is provided with one caster at its end; the device is of one-piece molded plastic construction and is strengthened by a rib extending lengthwise across the top of the plate and arms;
(g) U. S. Patent No. 4,077,644 ("Platform Hand Truck"): A rectangular platform with a planer top deck and a depending rim flange, with patterned rib reinforcement on the underside and rib pattern recesses designed to receive mounts for casters; preferred construction of synthetic resin;
(h) U. S. Patent No. Des. 219,649 ("The ornamental design for a service cart"): A square platform with a planer top deck and raised edges  thin on the sides and thick in front and back; the underside features a square rib pattern and casters in each corner; a handrail extends vertically from the rear corners and then horizontally toward the center;
(i) Rubbermaid dolly (1971-1973): A stamped metal plate of squarish shape with upwardly and outwardly formed arcuate recesses in its corners for receipt of caster stems; a plastic plug, U. S. Patent No. 3,512,740, was attached to the center of the plate by bolt for connection to a socket on the underside of a container; and
(j) Rubbermaid dolly (1974-): A pair of metal channel members arranged in an X-frame relation with casters mounted at the end of the arms; a plastic plug, U. S. Patent No. 3,512,740, was attached to the frame intersection for connection to a socket on the underside of a container.
With respect to the level of ordinary skill in the art, the record shows that similar industrial product designs obsessively stressed functional considerations. There was repeated testimony that aesthetic considerations were of lesser importance to the design of industrial products. Dollies for direct attachment to a container were functionally shaped plates or X-frames mounted on casters to which a container was fastened by plug-and-socket or clamp device. The more recent dollies, constructed of both metal and plastic, featured a starker appearance then prior devices.
The record shows that prior art differs from 833 in shape and aesthetic appearance. Swedish Patent No. 154,659 features different proportions and a harsher, angular surface. U. S. Patent No. 926,288 has harsh edges and a flat circular design in contrast to 833's soft edges and concentric circular design. U. S. Patent No. 1,328,458 is doughnut-shaped, without 833's double level frame, let alone a solid platform. U. S. Patent No. 2,740,981 has neither a ribbed undersection nor 833's proportions. U. S. Patent No. 3,512,740 is simply a plug which was attached to Rubbermaid's aesthetically distinct metal frames in its early dollies (one of which was an X-frame and the other harshly contoured). U. S. Patent No. 3,734,527 is an X-framed device, and is built with a flat, not double-leveled contour. Both U. S. Patent No. 4,077,644 and U. S. Patent No. Des. 219,649 are square-edged, one-level platforms, which bear no resemblance to 833 even in their underside rib patterns.
Against this background, the credible evidence was to the effect that 833 was not obvious in light of prior art. Given this evidence, coupled with the great commercial success of both parties with their respective commercial dollies, the Court finds that 833 is not obvious to a person of ordinary skill in industrial design.
For the reasons given above, this Court finds that Maza and Tomblin did not withhold relevant information in prosecuting the application for 833, that 833 features an "ornamental" design, that 833 is not concealed in the normal use defendant intended, that 833 is not obvious to a person with ordinary industrial design skills in light of prior art, and that 833 is a valid patent.
Plaintiff alleges that even if 833 is valid, it did not infringe said patent because of differences between its commercial dolly and 833. The test for design patent infringement was stated in Gorham Co., supra, 81 U.S. at 528, 14 Wall. at 528:

*1079 "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."
Plaintiff's expert witness, Roth, testified that plaintiff's commercial dolly differed from 833 because the former featured arcuate recessed wheel wells which opened into the dolly's side skirt, while the latter featured circular recessed wheel wells which did not break the dolly's side skirt. This is not so substantial a change in design that an ordinary purchaser could readily distinguish between them. The shape and softness of the edges is identical. The use of five casters is identical. A slight variation in the underside ribbing pattern strikes the Court as nothing more than a blatant attempt to disguise the fact that plaintiff "designed" its commercial dolly by copying defendant's commercial dolly. The Court finds that plaintiff's dollies infringed 833.
Accordingly, the Court finds that plaintiff is not entitled to a declaratory judgment that 833 is unenforceable or that its commercial dollies do not infringe 833. The Court further finds that defendant on its counterclaim is entitled to a declaratory judgment that 833 is valid and that plaintiff's commercial dollies infringe 833.
The Court adopts this memorandum opinion as its findings of fact and conclusions of law, and the clerk of the Court is directed to prepare and enter the proper order.
 *1080
NOTES
[1] Swedish Patent No. 154,659; U. S. Patent No. 926,288; U. S. Patent No. 1,328,458; U. S. Patent No. 2,740,981; U. S. Patent No. 3,512,740; U. S. Patent No. 3,734,527; U. S. Patent No. 4,077,644; U. S. Patent No. Des. 219,649.