ELECTRONIC MOLDING
CORPORATION,
Plaintiff,

v.

MUPAC CORPORATION, Defendant.

Civ. A. No. 81–0282–C.

United States District Court,
D. Massachusetts.

Dec. 22, 1981.

Sewall P. Bronstein, Dike, Bronstein, Roberts, Cushman & Pfund, Boston, Mass., and Leonard Michaelson, Salter & Michaelson, Providence, R. I., for plaintiff.

Charles C. Winchester, Fish & Richardson, Boston, Mass., for defendant.

### MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by the plaintiff Electronic Molding Corporation (EMC) against the defendant Mupac Corporation (Mupac) for alleged infringement of United States Design Letters Patent Number 223,-109 (109) and United States Patent Number 3,784,965.[1] Jurisdiction is founded on 28 U.S.C. § 1338(a).

The case came before the Court for a non-jury trial. At the close of the plaintiff's case-in-chief, which consisted solely of the inventor's testimony, the defendant Mupac moved for dismissal of the 109 infringement claim pursuant to Fed.R.Civ.P. 41(b). Mupac contends that the plaintiff EMC is not entitled to relief because the 109 patent is invalid. The claim of invalidity rests on the ground that the design in question is concealed in use and therefore not ornamental as required by 35 U.S.C. § 171. Both sides have filed memoranda of law on the validity issue which is now before the Court.

### I. *Findings of Fact*

#### A. *The Patented Design*

The article that embodies the 109 design is described as an "Electronic Terminal" for the purpose of the Patent Office Rules, 37 C.F.R. § 1.153(a). A terminal is less than one inch in length and approximately one-sixteenth of an inch in diameter. I find that the ten times enlarged model of the terminal submitted into evidence as plaintiff's Exhibit 3 is not an "Electronic Terminal" but rather a demonstration model used for sales purposes.

A terminal has a top cap joined to a reduced neck which is then joined to a distinctive knurled section. The uppermost part of the knurled section has adjacent flat crests and grooves extending the length of a raised portion on which they are formed. The knurl tapers down to the barrel where it terminates in a chamfered portion. An elongated tail is joined to the barrel of the terminal at the lowermost end. I find as a fact that the distinctive design feature of this terminal is embodied in the knurl, which EMC emphasizes in advertising by use of the registered trademark "Nurl-Loc." I find, further, that the top cap and tail portions are not part of the distinctive design. I base this finding on the facts that prior terminals exhibit these same features and that the inventor only can identify his design with reference to the knurled section.

#### B. *Visibility of the Design and Use of the Terminal*

I find that in commercial use, the terminal is inserted into a so-called wire-wrap panel board designed to receive integrated circuit packages which are plugged into the terminals at the top ends where the caps project above the board. The terminals have ancillary uses as replacement parts and demonstration tools.

In the functional use illustrated in the patent application, the terminals are inserted in the panel board and the knurl is embedded in the board to keep the terminal in place. The top cap of each terminal extends above the board and the elongated tail extends below the board.

I find that when the "Nurl-Loc" terminal is so inserted in the panel board, the knurl and its distinguishing characteristics are entirely concealed from sight. I find that when not inserted in the panel board, the

---

1. U. S. Patent No. D–223,109 was issued to EMC as assignee of James V. Murphy on March 14, 1972, for a design for an "Electronic Terminal." U. S. Patent No. 3,784,965 was issued to EMC as assignee of James V. Murphy for a Terminal Construction on January 8, 1974. The matter now before the Court relates only to the claims concerning Patent No. D–223,109.

distinctive features of the "Nurl-Loc" terminal configuration are visible, but are so small as to be very difficult to identify without magnification.

### C. *Factors Considered By The Patent Office*

I find that the Patent Office Examiner was aware that in the use illustrated in the patent application the terminal would be inserted in a panel board and the knurled area of the terminal would be obscured. I also find, however, that there is no indication that the Examiner knew that the portions of the terminal not concealed by the board were old and were not à part of the distinctive design features claimed by the applicant. I base this finding on the specific fact that the applicant did not cite a prior competitor design (Augat terminal) which, when embedded in a panel board would be visually indistinguishable from the EMC "Nurl-Loc" terminal.

## II. *Conclusions of Law*

### A. *Preliminary Questions*

As a preliminary matter, I rule that patentability must be determined solely with regard to the article described as an "Electronic Terminal" for the purposes of the Patent Office Rules. Therefore, the uses and appearance of EMC's demonstration model are irrelevant to the claim before the Court.

■ As to the rebuttable presumption of patent validity attaching to a patent granted by the Patent Office under 35 U.S.C. § 282, I rule that plaintiff EMC is not entitled to the full weight of the presumption. As a general consideration, this presumption has been weakened in patent cases in recent years. *See, e.g., Jacuzzi Bros., Inc. v. Berkeley Pump Company*, 191 F.2d 632, 634–35 (9th Cir. 1951). Where the Patent Office has not considered certain prior art references in the design application, the presumption may be completely dispelled. *International Paper Box Machine Co. v. Specialty Automatic Machine Corp.*, 414 F.2d 1254 (1st Cir. 1969). With-

out reaching the question whether because of the failure to cite the Augat terminal EMC has breached a duty to disclose pertinent prior art, I rule that this omission is sufficient significantly to weaken the presumption of patent validity. *See* 414 F.2d 1254.

### B. *"Normal Use" Relative to Patent Protection*

■ The major question of law to be resolved here is to decide what use or uses of EMC's "Nurl-Loc" terminal constitute "normal use" relative to patent protection. The crux òf Mupac's claim of patent invalidity is that the design is concealed in use. It is well settled that a design is not patentable if its elements are concealed in the normal use of the device to which the design is applied. *In re Cornwall*, 230 F.2d 457, 43 CCPA 824 (1956). In *Cornwall* the court ruled that only those parts visible when in use properly could be considered in determining the patentability of a design. *Id.* 230 F.2d at 459. *See Application of Stevens*, 173 F.2d 1015, 1017, 36 CCPA 1017 and cases therein cited.

In this case, only the top cap and tail of the terminal are visible when the terminal is imbedded in a panel board, and those then-visible portions do not constitute a new design. To the extent that the only "normal use" of the terminal is in the panel board, the design is not ornamental and the patent is not valid.

EMC claims, however, that "normal use" relative to patent protection of the terminal is not limited to its use in the panel board. EMC contends that use of the terminal as a demonstration tool and of the terminal as a replacement part constitute "uses" of the invention, and that in these uses the design is ornamental as required by 35 U.S.C. § 171.

Disregarding the fact that even when loose the claimed ornamental features of the terminal are *barely* visible to a person with normal eyesight, the issue here is whether either display or sale as a replacement part of the terminal in loose form constitutes "normal use" of this electronic

terminal. I rule that neither display nor provision of the terminal as a replacement part constitutes normal use for the purposes of patent protection.

In *Contico International v. Rubbermaid*, 506 F.Supp. 1072, 210 U.S.P.Q. 649 (D.C. ED Mo.1981), the defendant similarly argued that the relevant time of visibility. was when the article was "displayed or offered for sale" and the court upheld the validity of the patent. EMC has cited *Contico* in support of the proposition that the relevant time of visibility could be when the item is displayed or offered for sale. Contrary to EMC's assertions, however, the court in *Contico* did not reach the question whether or not the relevant time of visibility could be when the object was displayed or offered for sale. In upholding the patent, the court pointed out that the record showed that normal use of the commercial dolly at issue was not confined to support of a container in which position its design features were concealed. The court noted that normal usage of the item entailed frequent attachment to and detachment from the container it was designed to support, at which times the design features claimed were fully visible. Accordingly, the court in *Contico* ruled that the dolly was not concealed in normal use. 506 F.Supp. 1072, 210 U.S.P.Q. at 653. Although the court did not define "normal use," the context suggests that the court took those words to mean use of the item in the capacity for which it was designed. EMC does not claim, and the record does not support a finding that the design features of the EMC "Nurl-Loc" terminal are exposed to view in usage with similar frequency.

I further rule that the fact that EMC's terminal might be used as a demonstration tool or that the entire terminal might be visible when purchased as a replacement part does not support a finding that the instant design is visible in normal use. In *Application of Stevens*, 173 F.2d 1015, 36 CCPA 1017 (1949) counsel advanced the same argument with respect to the design of a vacuum cleaner brush. The court, rejecting the patent application, stated:

> . . . Almost every article is visible when it is made and while it is being applied to the position in which it is to be used. Those special circumstances, however, do not justify the granting of a design patent on an article such as that here under consideration which is always concealed in its normal and intended use. The ornamental appearance of such an article is of such little concern that it cannot be said to possess patentability as a design. *Id.*, 173 F.2d at 1016.

Likewise, this Court cannot accept EMC's claim that the relevant time for the determination of design visibility can be the time when the terminal is displayed or sold loose as a replacement part because in the terminal's intended and normal use the design is fully concealed. To so rule would be to render meaningless the established doctrine that a design concealed in normal use is not patentable. I rule, therefore, that the "normal use" of the EMC "Nurl-Loc" terminal is its intended use as an electronic terminal embedded out of sight in a wire-wrap panel board.

■ I rule, as a matter of law, that the design in question is concealed in normal use and not ornamental as required by 35 U.S.C. § 171. Accordingly judgment will enter declaring United States Design Letters Patent Number 223,109 invalid and granting Mupac's motion to dismiss EMC's claim for alleged infringement of the 109 patent.