CONTICO INTERNATIONAL,
INC., Appellant,

v.

RUBBERMAID COMMERCIAL
PRODUCTS, INC., Appellee.

No. 81–1134.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1981.

Decided Dec. 4, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 30, 1981.

ARNOLD, Circuit Judge.

This is a design patent case. The questioned patent, owned by defendant Rubbermaid Commercial Products, Inc., describes an ornamental design for a dolly that is attachable to certain of its refuse containers. The plaintiff Contico International, Inc., brought this action in the District Court [1] seeking a declaratory judgment that Rubbermaid's design patent, No. 251,833 (No. 833), is invalid and that the patent is not infringed by dollies manufactured and sold by plaintiff. Contico also asked that defendant be enjoined from filing or threatening to file actions for infringement of No. 833 against the plaintiff, its customers, or other parties. The defendant counterclaimed, praying for its own declaratory judgment that No. 833 was valid and that the patent was infringed by the plaintiff's product, and further asking for injunctive and compensatory relief. [2]

The cause was tried to the District Court, and a resulting judgment was filed on January 2, 1981, in favor of the defendant, holding the patent valid and infringed. By order of the District Court the issue of damages was to be tried separately and at a later date. [3] Contico now appeals the decision of the trial court. We affirm.

## I.

Contico and Rubbermaid are competitors in the market for the sale of industrial, institutional, and sanitation products. In the early 1970's Rubbermaid was marketing a collection of refuse, material, and food-handling containers, along with various accessories, known as the "Brute" line. One such accessory was a zinc-plated metal dolly which enabled the containers to be rolled about, rather than being dragged or carried. In late 1976 a project to redesign

Ralph W. Kalish (argued), Kalish & Gilster, St. Louis, Mo., for appellant.

Everett R. Hamilton, Edward G. Greive, Hamilton, Renner & Kenner, Akron, Ohio, and John K. Roedel, Jr. (argued), Senniger, Powers, Leavitt & Roedel, St. Louis, Mo., for appellee.

Before BRIGHT, HENLEY and ARNOLD, Circuit Judges.

1. The Hon. Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri. The decision is reported as *Contico International, Inc. v. Rubbermaid Commercial Products, Inc.*, 506 F.Supp. 1072 (E.D.Mo.1981).

2. In addition, both parties to the action sought an award for costs and attorney's fees pursuant to 35 U.S.C. § 285.

3. Although the order appealed from is interlocutory, we have jurisdiction under 28 U.S.C. § 1292(a)(4).

the "Brute" line was undertaken. One aspect of the project involved the redesign of the "Brute" dolly.

The redesign project was primarily the work of two employees of defendant, Dale T. Maza, an industrial designer, and Glen E. Tomblin, a mechanical engineer. Their efforts resulted in an application, in their names, for a design patent entitled "Dolly for Refuse Container" filed August 22, 1977. See Plaintiff's Exhibit 1. This new dolly, unlike Rubbermaid's previous product, was made of a foam plastic material and had five casters as opposed to four.

Rubbermaid received its first orders for the new product in February of 1978. Sometime after its introduction the plaintiff Contico purchased one of defendant's dollies and used it as a model to design a competing version. Contico's version of the dolly was ready and offered for sale in August of 1978. There was evidence that both products have enjoyed impressive sales since the time of their introduction.[4]

On May 15, 1979, design patent No. 833 was issued to Rubbermaid as the assignee from Maza and Tomblin. Thereafter, on June 5, 1979, Rubbermaid notified Contico by letter that it considered Contico's dolly to be an infringement of No. 833 and demanded that Contico cease and desist all manufacture and sale of the allegedly infringing dollies. Six days later, on June 11, 1979, plaintiff filed its complaint in the District Court.

The plaintiff claimed that No. 833 was invalid because: (1) Maza and Tomblin failed to disclose prior art in applying for No. 833, (2) No. 833 is a functional rather than an ornamental design, (3) the subject of No. 833 is concealed in normal use, and (4) No. 833 is obvious in view of the prior art. In its counterclaim the defendant, as owner of the patent, sought a declaratory judgment that No. 833 was valid, and asserted its right to sue and recover damages for past infringement and its right to enjoin future infringement.

In December of 1979 and April of 1980 the District Court conducted a five-day non-jury trial. After considering the evidence offered at trial and other relevant materials in the record the trial court found for the defendant. In reaching its decision the court found, *inter alia*, that Rubbermaid's design patent was new, original, ornamental, and nonobvious in view of the prior art, and that Contico had copied Rubbermaid's patented design. This appeal followed.

## II.

The various issues involved in design patent cases have not been addressed by this Court on a regular basis. In fact, this is only the second design patent case we have heard since 1926, when *Boyle v. Rousso*, 16 F.2d 666 (8th Cir. 1926), was decided. See *Clark Equipment Co. v. Keller*, 570 F.2d 778 (8th Cir.), *cert. denied*, 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978). A partial reason may be "that the primary responsibility for sifting out unpatentable material lies with the Patent Office," *Graham v. John Deere Co.*, 383 U.S. 1, 18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), and not the courts. As Mr. Justice Frankfurter once observed, the courts are ill-fitted "to discharge the duties cast upon them by patent legislation." *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 60–61, 63 S.Ct. 1393, 1420–1421, 87 L.Ed. 1731 (1943) (Frankfurter, J., dissenting) (footnote omitted).

With this in mind several points as to the role of the courts in patent suits, both at trial and on appeal, bear mention. The role of the trial court is a somewhat limited one, because patents, once granted by the Patent Office, enjoy a statutory presumption of validity. 35 U.S.C. § 282.[5] This statutory presumption rests on a legislative recognition of the considerable exper-

---

4. There was testimony that Rubbermaid, in its first 20 months since introduction of the new dolly, sold 144,230 units. Contico had sales of 32,050 units in its first 17 months.

5. Section 282 provides in part:

A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

tise possessed by the Patent Office and an assumption that the Office properly performs its administrative functions. See *Morgan v. Daniels*, 153 U.S. 120, 124–25, 14 S.Ct. 772, 773, 38 L.Ed. 657 (1894). Thus, there is wide agreement that the burden on the party asserting invalidity is a heavy one. In this circuit a trial court cannot void a patent unless invalidity is proved by substantial evidence.[6] *Woodstream Corp. v. Herter's, Inc.*, 446 F.2d 1143, 1149 n.4 (8th Cir. 1971).

The role of this court on appeal is also circumscribed. For instance, as to all factual determinations made by the court below, our review must be kept within the confines of Rule 52(a), Fed.R.Civ.P., which allows us to reverse such findings only where they are clearly erroneous. Our role is also a limited one when viewed in light of a patent's statutory presumption of validity. This is especially true where, as here, the trial court has undertaken an independent examination of the relevant facts after testimony at trial and made extensive findings to the effect that the patent was validly issued. See *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976). It is with these considerations in mind that we review the decision of the District Court.

### III.

Design patents are obtainable pursuant to 35 U.S.C. § 171, which provides in part:

Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

As the language we have underscored suggests, a design patent is subject to some of the same requirements as a utility patent, but it is not the function of the invention that is protected by the patent, but rather "that which gives a peculiar or distinctive appearance to the manufacture, or article." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 525, 20 L.Ed. 731 (1872).

The appearance of the claimed design must meet two conditions: novelty and nonobviousness, as defined by 35 U.S.C. §§ 101 and 102, and § 103, respectively.[7] The novelty of a design patent is to be considered in light of the impact of the design upon the ordinary observer. This condition is met when the "average observer takes the new design for a different, and not a modified already existing design." *Thabet Manufacturing Co. v. Kool Vent Awning Corp.*, 226 F.2d 207, 212 (6th Cir. 1955). The nonobviousness of the design is viewed in a somewhat different light, however. There, "the differences between the design patent and the prior art must not be obvious to a designer with ordinary skill in the art." *Clark Equipment Co. v. Keller*, *supra*, 570 F.2d at 799.

The most substantial argument urged by Contico on appeal, and the only one we deem deserving of extensive discussion, is that the trial court erred when it found that No. 833 was not obvious in view of the prior art under 35 U.S.C. § 103. A conclusion of obviousness *vel non* pursuant to § 103 raises a question of law. But there are several factual findings which underlie any determination of the legal issue. They are the following:

(1) the scope and content of the prior art,

(2) differences between the prior art and the claimed design, and

(3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co., supra*, 383 U.S. at 17.

As for the first area of factual inquiry required by *Graham*, the trial court careful-

---

**6.** Some other circuits have said invalidity must be proved by clear and convincing evidence. See, *e. g., Aluminum Co. of America v. Amerola Products Corp.*, 552 F.2d 1020, 1024 (3d Cir. 1977); *Saf-Gard Products, Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1271 (9th Cir.), *cert. denied*,

429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

**7.** 35 U.S.C. §§ 101 and 102 also address a third condition—utility—which, by definition, is not relevant in the design patent context.

824

ly scrutinized the relevant prior art. The court considered two models of Rubbermaid's earlier dollies, and eight other patents, both foreign and domestic, which described devices designed for the transport of such things as carpet, buckets, and barrels.[8]

■ The second area of inquiry involves the differences between the prior art and the patent in issue. Here the trial court found significant differences between No. 833 and the prior art. In the trial court's eyes No. 833 was possessed of "softly accentuated characteristics" along with a "futuristic form." *Contico International, supra,* 506 F.Supp. at 1075. On the other hand, the prior art, for the most part, was characterized by harsher, more angular surfaces which were found to follow from purely functional considerations. This Court, at oral argument, was also afforded an opportunity to view the various subjects of this suit. We agree that the defendant's dolly is significantly different in appearance from the other exhibits offered by the plaintiff. Thus, we cannot say the trial court erred in its findings as to No. 833's variance from the prior art.

Last, the District Court found that the differences between No. 833 and the prior art were not obvious to a person with ordinary industrial-design skills. Once again, after a review of the entire record, we are unable to say that the court erred in making this determination.

■ The appellant argues that the District Court failed to establish the exact level of skill required by the third area of factual inquiry, and thus necessarily arrived at an erroneous conclusion of law. We think this argument misconceives the nature of the determination required. It is not necessary for the trial court to define specifically the various characteristics possessed by this "hypothetical person skilled in the art."[9] See *Flour City Architectural Metals v. Alpana Aluminum Products, Inc.,* 454 F.2d 98, 108 (8th Cir. 1972). It is enough that the court considered the obviousness claims in reference to a hypothetical person possessed of ordinary skill in the area of industrial design. That was done here.[10]

■ The evidence relevant to this issue was presented, for the most part, in the form of expert testimony. As is often the case, the testimony was conflicting. Frank Roth, an industrial designer testifying for Contico, considered the defendant's dolly to be "pretty routine" from a design perspective. Tr. 535. He also opined "[t]hat it didn't take a guy with four years of college training to make this piece of work." *Ibid.* Rubbermaid's expert, Bernard McDermott, a renowned industrial designer possessed of more than ordinary skill, testified, however, that if he had had all the prior art before him, the design of Rubbermaid's dolly would not have been obvious to him. Tr. 914. It follows a fortiori (the trier of fact having credited McDermott) that the new dolly would not have been obvious to an

8. The Patent Office cited only two patents from the group considered by the trial court. Plaintiff contends that Rubbermaid failed to reveal certain other aspects of the prior art in its application, but the District Court found, and we agree after comparing the various exhibits, that the omitted items were sufficiently different from the dolly in suit to make this nondisclosure immaterial.

9. We are aware that some courts require a stricter adherence to the fact-finding requirements set out in *John Deere.* See, e. g., *Waldon, Inc. v. Alexander Mfg. Co.,* 423 F.2d 91 (5th Cir. 1970). Other courts have not taken this technical approach, nor shall we, so long as it is apparent that the trial court "grappled with the problems presented" by *John Deere. Price v. Lake Sales Supply R. M., Inc.,* 510 F.2d

388, 391 (10th Cir. 1974). See also *Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 461 F.2d 66 (3d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972).

10. In *Flour City, supra,* we reviewed a trial court's finding that a utility patent on an insulated window frame was void for obviousness. The trial court made this finding after considering the obviousness claims in light of the " 'expected skill of a worker in the metal window art.' " 454 F.2d at 107. This is not unlike the District Court's finding here that No. 833 was not obvious to a person with ordinary industrial design skills. In both cases the findings are adequate to resolve the obviousness issue at trial and for the purpose of review.

industrial designer of ordinary skill. Plaintiff objects earnestly that McDermott's testimony was "self-serving." No doubt the same could be said of Roth, plaintiff's expert. The crucial point is that the trier of fact believed McDermott.

Our review of the entire record persuades us that the District Court properly considered No. 833 within the analytical framework provided by *Graham*. The factual findings on the issue of obviousness are not clearly erroneous, and we can find no error of law.[11]

### IV.

The plaintiff makes numerous other arguments for reversal. It is urged, for example, that a dolly for the transportation of trash cans cannot be "ornamental." This argument overlooks the important point that design patents are concerned with the *industrial* arts, not the fine arts. The statute refers to "any ... ornamental design for an *article of manufacture*." 35 U.S.C. § 171 (emphasis supplied). Perhaps it is *too much* to expect that a trash-can dolly be beautiful. It is enough for present purposes that it is not ugly, especially when compared to prior designs. We have considered plaintiff's other arguments and see no purpose in elaborating on the District Court's thorough opinion, with which, in substance, we agree.

The judgment is affirmed.

---

11. Plaintiff argues that there is little justification for the presumption of validity in design-patent cases because determining the similarity of designs requires no expertise or technical knowledge. Several cases from the Ninth Circuit are offered in support of this proposition. E. g., *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295 (9th Cir. 1970); *Bentley v. Sunset House Distributing Corp.*, 359 F.2d 140 (9th Cir. 1966). The law in that circuit on the issue of obviousness, however, differs from the law in this circuit. The Ninth Circuit employs an "ordinary intelligent man" standard when considering the differences between the patented design and the prior art, while we use a "designer with ordinary skill in the art" standard. *Compare Schwinn, supra*, 444 F.2d at 299, *with Clark Equipment, supra*, 570 F.2d at 799. A prior determination under the "designer" standard involves a certain amount of expertise that is entitled to deference, and thus we retain the presumption of validity in design-patent cases. See *Rousso, supra*, 16 F.2d at 668. *Accord, Sidewinder Marine, Inc. v. Starbuck Kustom Boats*, 597 F.2d 201, 205 (10th Cir. 1979); *Steelcase, Inc. v. Delwood Furniture Co.*, 578 F.2d 74, 77 (5th Cir. 1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1503, 59 L.Ed.2d 774 (1979).