**Arnold P. MOORE, an individual d/b/a Moore's Antiques & Crafts, Plaintiff,**

v.

**Charles STEWART, an individual d/b/a Whistle Factory, Defendant.**

Civ. No. 82–3056.

United States District Court,
W.D. Arkansas,
Harrison Division.

Jan. 7, 1985.

J. Michael Shaw, Shaw, Ledbetter, Hornberger, Cogbill & Arnold, Fort Smith, Ark., and Allan J. Sternstein and William H. Frankel, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.

Frank C. Elcan, II, Harrison, Ark., and Robert R. Keegan, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Arnold P. Moore, brought this action against defendant, Charles Stewart, pursuant to 28 U.S.C. § 1338(a) and (b) and 15 U.S.C. § 1121. Plaintiff claims damages for patent infringement, trademark infringement, unfair competition, and false designation of goods in commerce. Defendant denied the allegations of the complaint and counterclaimed for a declaratory judgment that the design patent in question was invalid and not infringed upon.

By an order of this court entered on December 6, 1983, the issue of liability on the patent infringement and unfair competition claims was tried separate and apart from the issue of damages. Trial on the liability issue was tried to the court on August 8 and 9, 1984.

### I. Background

From the pleadings, stipulations of the parties, and the credible testimony presented at trial, it appears that plaintiff, a former coal miner, is now a full-time whistle builder. Prior to 1979 Mr. Moore whittled as a hobby, making toys and whistles. At the suggestion of friends who admired his work, plaintiff began making toy whistles with the intention of selling them. He testified that he worked for three to four months to design a configuration that he liked and which he thought would sell. During this period he experimented with a number of different kinds of whistles—including single and multi-tone whistles—be-

fore he settled on a whistle configuration which he found pleasing.[1]

The toy whistle configuration which Mr. Moore finally decided to market was a four-tone wooden whistle. Because the multiple tones created a steam train whistle effect, the whistles were marketed as train whistles with a picture of a steam locomotive and train branded on one side. Plaintiff sold his first train whistle some time in March of 1979. Since that time he has sold many thousands of whistles.[2]

The record reflects that plaintiff spent considerable time, effort, and money developing and promoting his new business. He and his family sold many whistles by traveling throughout the country, stopping at crafts shops, souvenir shops, crafts fairs, gift shops, antique shops, etc. They also developed a lucrative mail-order business. The Moores shipped train whistles to wholesale buyers throughout the United States and in Germany and Switzerland. As part of his promotion, Mr. Moore commissioned the drawing of a logo showing a cartoon character blowing one of Mr. Moore's whistles. This logo was reproduced on business cards, posters, buttons, shipping cartons, and mailers. Plaintiff estimated that he had distributed several thousand business cards and posters since he began selling his whistles.

Mr. Moore met defendant Stewart some time around the middle of 1979. While on a sales trip, plaintiff stopped in to visit a woodcarving shop run by defendant Charles Stewart in Alpena, Arkansas. Because Mr. Stewart sold woodcarvings and other wooden items in his shop, Mr. Moore approached him about selling train whistles. Although defendant initially declined to buy any of the whistles, the men eventually agreed to trade woodcarvings for whistles. Mr. Stewart soon sold the whistles Mr. Moore left and ordered more whistles. The parties have stipulated that defendant bought and resold over 700 Moore whistles from April, 1979, to April, 1980.

On October 30, 1979, plaintiff filed an application for a patent; U.S. Design Patent No. 263,383 (hereafter referred to as 383) was issued to Mr. Moore on March 16, 1982. During this period defendant quit ordering whistles from plaintiff and began to make his own whistles. There was evidence presented that Mr. Stewart began selling his whistles to his customers rather than the Moore whistles. When Mr. Moore learned that Mr. Stewart was producing and selling what appeared to be an almost exact copy of his whistle, he contacted Mr. Stewart both in person and through his attorneys in an effort to make him cease production of the copies. When these efforts proved to be unsuccessful, this action was brought.

## II. Discussion Incorporating Findings of Fact And Conclusions of Law

### A. Design Patent Validity

A designer may procure a design patent pursuant to 35 U.S.C. § 171: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." A design patent does not protect the function or utility of an invention, but those elements of a design which give the invention a peculiar or distinctive appearance. *Gorham Company v. White,* 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1872).

> The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its saleable value, may enlarge the demand for it, and may be a meritorious service to the public. It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them.

*Gorham, supra,* at 525.

In addition to being ornamental rather than functional, the appearance of

---

1. Plaintiff introduced an example of one of his prototype designs. Although this hand-whittled whistle sounds very similar to the later production model whistles, it is quite different in appearance.

2. At the trial plaintiff projected that he would sell as many as 80,000 whistles in 1984 alone.

the design for which protection is sought must be novel (35 U.S.C. §§ 101, 102) and nonobvious (35 U.S.C. § 103). *See also Contico International v. Rubbermaid Commercial Products*, 665 F.2d 820, 823 (8th Cir.1982).

Once granted, a patent enjoys a statutory presumption of validity. 35 U.S.C. § 282.

> The mandate of section 282 is twofold, requiring "that a party asserting invalidity bear not only the presumption generated burden of going forward with proof but also the burden of persuasion on that issue." The latter burden remains on the party asserting invalidity whether relevant prior art was or was not considered by the examiner during the prosecution of the patent application before the PTO. The presumption is fully rebutted only when the party asserting invalidity meets the burden of persuasion, *i.e.*, relies on evidence that does in truth render the claimed invention invalid ....

*E.I. du Pont de Nemours v. Berkley & Co.*, 620 F.2d 1247, 1266 n. 30 (8th Cir. 1980). Furthermore, the party asserting invalidity must overcome the presumption of validity by substantial evidence. *Clark Equipment Co. v. Keller*, 570 F.2d 778, 795 (8th Cir.1978), *cert. denied*, 439 U.S. 825, 99 S.Ct. 96, 58 L.Ed.2d 118 (1978); *Woodstream Corp. v. Herter's Inc.*, 446 F.2d 1143, 1149 n. 4 (8th Cir.1971).

Defendant challenges the validity of design patent 383 on three grounds: first, that the drawings and written description of the invention failed to contain an adequate number of views to constitute a complete description of the appearance of the whistle; second, that the design was functional rather than ornamental; and third, that the design was obvious in light of the prior art.

**B. Incomplete Disclosure**

Defendant urges that patent 383 does not present a sufficient number of views to constitute a complete disclosure of the appearance of the whistle. The Rules of Practice in Patent Cases require that "The design must be represented by a drawing made in conformity with the rules laid down for drawings of mechanical inventions and must contain a sufficient number of views to constitute a complete disclosure of the appearance of the article ...." 37 C.F.R. § 1.152. Furthermore, in design patents no description other than a reference to the drawing is ordinarily required. 37 C.F.R. § 1.153(a). Patent 383 as issued contains three drawings of the train whistle: FIG. 1 is an isometric view of the whistle showing the mouthpiece and two sides; FIG. 2 is an end view; and FIG. 3 shows a view of one side of the whistle. Defendant argues that the patent is invalid because the drawings do not fully illustrate each of the four sides of the whistle and there is no written statement which indicates that the invention is symmetrical on four sides.[3] These deficiencies, in defendant's view, lead to the conclusion that patent 383 does not adequately disclose the appearance of the whistle.

In support of this argument, Mr. Stewart points to Defendant's Exhibit 2, a multitone train whistle made and sold by a Douglas Bruschi. When viewed from one angle, the Bruschi whistle looks very similar to the Moore whistle, but further examination reveals that it is a three-toned whistle which is more or less three-sided. Defendant contends that when viewed from the proper angle, the Bruschi whistle appears to be very similar to the drawings in patent 383, but that the similarity disappears when the Bruschi whistle is rotated in 90° steps.

We do not agree that the drawings in 383 do not disclose the differences between the Moore whistle and other train whistles such as the Bruschi whistle. Although FIG. 3 alone may not fully distinguish the differences between the whistles, FIG. 1 and FIG. 2 clearly present views of the

---

3. Such a statement was included in Design Patent 199,143 in *Hadco Products, Inc. v. Walter Kidde & Co.*, 462 F.2d 1265, 174 USPQ 358 (3rd Cir.1972).

Moore whistle which differ noticeably from the Bruschi whistle.[4]

Neither do we find that 383 fails to completely disclose the appearance of the invention. In *Application of Fee*, 397 F.2d 329 (C.C.P.A.1968), the Court of Customs and Patent Appeals affirmed the rejection of an application for a design patent for insufficient disclosure. It is significant to note that the two drawings in the rejected application failed completely to render any view of the appearance of a "dominant feature" of the design. Here, all one could say of the drawings in 383 is that they failed to disclose the appearance of two sides of the whistle which were identical to the two sides which were shown.

We also reject the idea that 383 is invalid because it should have in some way disclosed the four-sided symmetry of the Moore whistle. Taking the three views together, we find that one could reasonably have deduced that the whistle's appearance was the same on each of its four sides.[5]

## C. Ornamentality

◼ Mr. Stewart mounts a more serious challenge to the validity of 383 in his contention that the design was not ornamental because it was dictated by functional requirements. It seems that any discussion of ornamentality vs. functionality must begin with the proposition that a design is not functional merely because the article designed may itself have some utilitarian function. The language of 35 U.S.C. § 171 foresees this possibility: "Whoever invents any new, original and ornamental design for an *article of manufacture* may obtain a patent therefor ...." (emphasis added.) Furthermore, designs have been held to be patentable for such functional items as a fireplace grate, *Bergstrom v. Sears, Roebuck and Co.*, 496 F.Supp. 476 (D.Minn. 1980); office furniture, *J.G. Furniture Co. v. Litton Bus. Systems, Inc.*, 436 F.Supp. 380 (S.D.N.Y.1977); a contour pillow, *Celebrity, Inc. v. A. & B. Instrument Co., Inc.*, 573 F.2d 11 (10th Cir.1978); and a dolly for refuse containers, *Contico Intern. v. Rubbermaid Commercial Products, supra*, to name only a few.

Some courts have held that a design is functional rather than ornamental when it is "dictated solely by mechanical or functional requirements." *See, e.g., Hygienic Specialties Co. v. H.G. Salzman, Inc.*, 302 F.2d 614, 619 (2d Cir.1962). Other courts have phrased the standard somewhat differently, holding that a design is not patentable if its "configuration proceeds primarily from the necessity of functional or mechanical requirements." *Barofsky v. General Electric Corporation*, 396 F.2d 340, 342 (9th Cir.1968); and *Contico Intern. v. Rubbermaid Commercial Products*, 506 F.Supp. 1072, 1075 (E.D.Mo.1981), *aff'd*, 665 F.2d 820 (8th Cir.1981).

◼ In support of his contention, defendant argues that the shape of the mouthpiece, the length of the whistle, the placement and shape of the air inlets and outlets, the shape of the reeds, the overall shape and dimensions of the whistle and the choice of the construction materials were all dictated by functional and/or economic considerations.[6] We are not con-

---

4. For example, FIG. 1 clearly indicates that the Moore whistle mouthpiece is four-sided with openings for four air chambers. When viewed from the same perspective the Bruschi mouthpiece is just as clearly three-sided with openings for only three air chambers.

5. *See, e.g., Ex parte Salsbury*, 38 USPQ 149 and 48 USPQ 339, where the Patent Office Board of Appeals held that a single figure of a drawing in a perspective view constituted a complete disclosure of the appearance of the article. Although the drawing did not show all surfaces of the article (because all surfaces were not visible from a single viewpoint), "... articles of a symmetrical nature are often sufficiently illustrated by a single well-executed perspective view, since it can be deduced with certainty from that one view how the article would appear from the other side." 38 USPQ at 151.

6. Defendant claimed plaintiff's whistle design was functional in part because Mr. Moore admitted at trial that he had found no other four-tone whistle that was less expensive to manufacture (Tr. 76). We find no authority, nor has defendant pointed to any, for the proposition that a design is not ornamental unless it was conceived without any consideration as to the cost of production.

vinced by this argument or by the evidence produced at trial in support of it, whether the standard is that the design was dictated solely or primarily by functional considerations. This conclusion is based in part upon our finding that the appearance of the Moore whistle does have a sufficient degree of aesthetic appeal. The simple lines, the configuration, the wood grain, and the hand-crafted appearance combine to create a pleasing impression upon the aesthetic senses of the ordinary observer. (See Appendix for illustrations of both the Moore and the Stewart whistles.)

We also find it significant that there are numerous other ways to produce a multi-tone train whistle effect without designing a whistle that looks like Mr. Moore's design. As we have already noted, plaintiff introduced into evidence an example of a prototype design; plaintiff testified that he experimented with several different designs before finding one that he liked. Additionally, Mr. Moore also holds U.S. Design Patent 263,382. This patent protects a toy train whistle design which is very different in appearance from patent 383. Mr. Stewart also produced evidence of a number of multi-tone whistles and horns, but each whistle was, again, significantly different in appearance from the Moore whistle. The evidence establishes that although there are certain functional requirements which must be met before a whistle effect can be produced, there are many possible design solutions which will still create the desired results. Therefore, the court finds that plaintiff's design accommodates the functional necessities, but is not dictated solely or primarily by them and the design protected by patent 383 is ornamental.

## D. Nonobviousness

■ Mr. Stewart also challenges the validity of patent 383 on the ground that the design was obvious within the meaning of

35 U.S.C. § 103.[7] In *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court outlined the factual inquiry to be made under the statute:

> Under § 103, the scope and content of the prior art are to be determined; the differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Graham, supra*, at 17, 86 S.Ct. at 693–94. Although the determination of obviousness or nonobviousness is made against this background of fact, the issue of obviousness is a question of law. *Peterson Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1548 (Fed.Cir.1984).

Based upon the record, the court finds that the prior art includes certain patents for multi-tone horns as well as a number of toy whistles, some manufactured commercially and others described in various handicraft publications. Specifically, the prior art consists of the following:

(1) The whole class of handcrafted whistles including slip-bark and bamboo or cane whistles. Such whistles are described in *Whittlin', Whistles, and Thingamajigs* by Harlan G. Metcalf. Published in 1974, this book of nature crafts describes the construction of slip-bark whistles and suggests lashing two or three individual whistles together with

7. 35 U.S.C. § 103 provides:
A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of the title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

strips of bark or twine to create a multi-tone effect.

(2) A two-tone wooden whistle described in the *Second Giant Home Workshop Manual* prepared by Popular Science Monthly. This whistle is made from a wooden block measuring 7/8" by 1½" by 3½".

(3) The Americana whistle advertised at p. 178 of the 1977 *B. Shackman & Co. Catalogue*. The Americana is a single tone wooden whistle measuring 4" by ¾" by ¾".

(4) U.S. Patent No. 43,222, a specification for design issued to G.V.P. Lansing in 1912 for an automobile exhaust horn.

(5) U.S. Patent No. 1,648,245 issued to E.A. Rudolph in 1926 for a musical toy. This patent was cited in patent 383.

(6) U.S. Patent No. 42,832, a specification for design issued to A. Cameron in 1912 for a multi-tone chime whistle. This patent was cited in patent 383.

(7) United Kingdom Patent No. 112,-363, issued to R. Field in 1918 for an improved musical wind instrument. This patent was cited in patent 383.[8]

■ In regard to ascertaining the differences between patent 383 and the prior art, we have grappled with the problem of comparing the Moore whistle to each example of the prior art. Because the prior art consists of single and multi-tone whistles and horns, there are certain functional similarities between 383 and the prior art. Specifically, whether one considers a slip-bark or bamboo whistle, the Americana whistle, the two-tone Popular Science whistle, or the Moore whistle, there must be air inlets and outlets, air chambers, and reeds if a whistle sound is to be produced. Likewise, many of these whistles share a certain handcrafted appeal. To this extent

patent 383 and the prior art are similar. In spite of these similarities, we find that the appearance of the Moore design is sufficiently different to distinguish it from the other handcrafted whistles.

The major feature which sets the design of patent 383 apart from the class of hand-crafted whistles is its unique configuration. This configuration creates a distinctive appearance while producing a four-tone train whistle sound. We also find, based upon the record before us, that this configuration was the creation of Mr. Moore. The one and two-tone whistles do not necessarily suggest that the only possible configuration for a multi-tone whistle would be that chosen by plaintiff.

In an effort to demonstrate the alleged obviousness, defendant's expert, presumably at defendant's request, built four Americana whistles, each of a different pitch, and banded them together to create a multi-tone whistle which somewhat resembled the design of patent 383. Having noted the similarity, we still cannot say that defendant has established that such a combination of single-tone whistles was obvious prior to the creation of the Moore design.

As for the Rudolph, Cameron and Field patents, we have examined these patents and find we must agree with the opinion of defendant's expert that these whistles are visually quite dissimilar from patent 383 (Tr. 205). This then leaves only the Lansing automobile exhaust horn. There are some visual similarities in the shape and general proportions of the two patents; however, the Lansing horn was, according to defendant's witness, probably made out of sheet metal and would be difficult to duplicate in wood. (Tr. 204–205). We find that the appearance of the Lansing horn is

---

**8.** The examples of prior art listed above are only the examples introduced by defendant at trial. The record also reflects that certain other patents were located in a patentability search initiated by plaintiff. Those publications include: U.S. Patent No. 396,821 for a bicycle whistle; U.S. Patent No. 649,576 for a whistle; U.S. Patent No. 1,383,878 for a toy whistle; U.S. Patent No. 1,515,471 for a locomotive whistle; U.S. Patent No. 1,705,627 for a controlling mechanism for locomotive whistles; U.S. Patent No. 1,786,122; U.S. Patent No. 3,721,521 for an apparatus for converting pressure energy to thermal energy; and U.S. Patent No. 4,020,693 for an accoustic transducer for nuclear reactor monitoring. All of these patents differ from patent 383 in shape, appearance and aesthetic appeal.

significantly different from that of the Moore train whistle.

In design patent cases the fictitious person identified in section 103 as "one of ordinary skill in the art" is considered to be "the designer of ordinary capability who designs articles of the type presented in the application; this approach has been found to be consistent with the requirement of *Graham* that the level of ordinary skill in the pertinent art be determined." *In re Nalbandian,* 661 F.2d 1214, 1216 (C.C.P.A.1981). Although defendant's expert offered his opinion that the design of the Moore whistle would be "fairly obvious" to a designer skilled in the art of woodworking (Tr. 206), there is almost no evidence in the record of the level of skill of the ordinary designer of toy whistles.[9] "In retrospect, many creative developments seem commonplace. The critical question under *Graham* is whether at the time of the invention the subject would have been obvious to one skilled in the art." *Woodstream Corporation v. Herter's, Inc., supra,* at 1156. Defendant's entire case against plaintiff on the issue of obviousness consists of the testimony of a single witness who concluded that patent 383 was obvious in light of the prior art. We find this evidence to be unpersuasive and insufficient to overcome the statutory presumption of validity.

 We also cannot ignore in our analysis of defendant's attack on the validity of patent 383 the fact that Mr. Stewart filed an application for a design patent on his whistle on October 24, 1983, while this action was still pending. It may be inconsistent for defendant to attack the validity of the Moore patent on the grounds of lack of ornamentality and obviousness while simultaneously seeking a patent for virtually the same design, but such inconsistency affords no basis for estoppel of defendant's claims. *Paramount Corp. v. Tri-Ergon Corp.,* 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997 (1935). However, this inconsistency is relevant in evaluating Mr. Stewart's vigorous attack on the validity of patent 383. *Bergstrom v. Sears, Roebuck and Co., supra,* at 487 n. 6.

 Having carefully considered defendant's claims regarding the validity of patent 383 and the record developed at trial, we cannot say that defendant has successfully carried his burden of proving invalidity. *See Environmental Designs v. Union Oil Co. of Cal.,* 713 F.2d 693, 699 n. 9 (Fed.Cir.1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1567 (Fed.Cir.1983).

## III. Infringement

The Supreme Court established the test for infringement of design patents in *Gorham Co. v. White, supra,* 81 U.S. (14 Wall.) at 525:

> We are now prepared to inquire what is the true test of identity of design. Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity. An engraving which has many lines may present to the eye the same picture, and to the mind the same idea or conception of another with much fewer lines. The design, however, would be the same. So a pattern for a carpet, or a print may be made up of wreaths of flowers arranged in a particular manner. Another carpet may have similar wreaths, arranged in a like manner, so that none but very acute observers could detect a difference. Yet in the wreaths upon one there may be fewer flowers, and the wreaths may be placed at wider distances from each other. Surely in such a case the designs are alike. The same conception was in the mind of the designer, and to that conception he gave expression.
>
> . . . .

---

**9.** The court does take judicial notice of the fact that the technology of making a whistle of this sort is so relatively simple that it is often mastered by small boys with pocket knives.

The purpose of the law must be effected if possible; but, plainly, it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringement.

We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

In this case Mr. Stewart manufactured and sold two whistle models. The first model was made prior to November, 1982, and is an almost exact copy of the Moore whistle. In his post-trial brief defendant conceded that this early version did infringe patent 383 if 383 were held to be valid. Because of our finding that defendant failed to overcome the statutory presumption of validity, we also find that the Stewart whistle made and sold prior to November, 1982, did infringe upon Mr. Moore's rights under patent 383.

The Stewart whistle made and sold since November, 1982, exhibits some minor design changes from the earlier model. Defendant has attempted to characterize this model as "wedge-shaped," but that characterization is not entirely accurate. Although a portion of one end of the whistle has been cut away, the whistle still retains the basic dimensions and configuration of the Moore whistle. The only other potentially significant change is in the position of the notched air outlets. In the Moore whistle the outlets are located just beneath the mouthpiece on each corner of the whistle. The effect of this placement of the outlets is that there is a notch at each corner for each outlet. The later Stewart model provides the necessary outlets with two notches, one on each side of the whistle beneath the mouthpiece. Each notch forms the outlets for two chambers. However, this difference in the air outlet positioning is not readily apparent, and usually is discovered only upon closer inspection. Other than these two variations, the Moore and the Stewart whistles are essentially the same.

The test for infringement requires only that there be substantial identity of appearance between the patented design and the accused design from the perspective of the ordinary observer. *Graver Mfg. Co. v. Linde Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); *Bergstrom v. Sears, Roebuck and Co., supra*, at 491. In the court's view the appearances of the Moore and the Stewart whistles are substantially identical despite the previously noted variations. The Stewart whistle even as modified retains the general shape, configuration, and dimensions of the Moore design; any differences in appearance, though discernible upon close examination, are not likely to be quickly perceived by an ordinary observer paying the degree of attention a purchaser would. The court also finds that the Stewart whistle appropriates the novelty in patent 383 which distinguishes it from the prior art. *Sears, Roebuck and Co. v. Talge*, 140 F.2d 395, 396 (8th Cir.1944). Specifically, the Stewart whistle appropriated the unique configuration which set the Moore whistle apart from the prior art.

### IV. Unfair Competition

In addition to his patent infringement claim, plaintiff also alleged that defendant engaged in unfair competition under section 43(a) of the Lanham Act.

■ To prove a violation of section 43(a), a plaintiff must establish the existence of three elements:

(1) that the trade dress or product configuration of the two competing products is confusingly similar;

(2) that the appropriated features of the trade dress or product configuration are primarily nonfunctional; and

(3) that the trade dress or product configuration has obtained secondary meaning.

*Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed.Cir.1984); *see also TESCO v. Fruehauf Corp.,* 536 F.2d 1210 (8th Cir.1976).

In this circuit the elements necessary to establish secondary meaning include:

[A] name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods ... may become so associated in the public mind with such goods ... that it serves to identify them and distinguish them from other goods ... of others. When such an association exists, the name, mark, or symbol is said to have acquired a "secondary meaning," in which the original user has a property right which equity will protect against unfair appropriation by a competitor.

*TESCO, supra,* at 1219, *citing, Shoppers Fair of Arkansas, Inc. v. Sanders Co.,* 328 F.2d 496, 499 (8th Cir.1964).

Plaintiff could also establish a section 43(a) claim by showing such substantial, exclusive and continuous use of the design over a sufficient period of time that the public has come to expect every wooden train whistle shaped like the Moore whistle to be made by plaintiff. If such recognition could be shown, the whistle itself could be said to have acquired secondary meaning or distinctiveness. *Peterson Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1549 (Fed.Cir.1984). In the alternative, plaintiff could even establish that his whistle had acquired such public recognition in spite of minimal sales and advertising, if there was proof that consumers did in fact associate the design of this type of whistle with plaintiff. *TESCO, supra,* at 1220.

Mr. Moore did testify that his whistle was recognized as the Arnold Moore whistle and that people associated any whistle of this type with him. However, we cannot consider his testimony as being conclusive on the issue. The only other proof offered which could have established that either the Moore whistle itself or some marking on it had acquired secondary meaning or distinctiveness was the testimony of a Mr. Ronald Conn, a retailer of wooden craft objects. Mr. Conn's stores had originally purchased plaintiff's whistles from the defendant. When Mr. Stewart began to manufacture his own whistle, he shipped his copy to Mr. Conn's stores rather than the Moore whistle. Mr. Conn testified that the whistles had been popular, but quality problems later arose after the substitution was made. We think it important to note that Mr. Conn spoke of train whistles generically; he even indicated that customers merely asked for train whistles, not Moore whistles. Mr. Conn never testified at any point that he identified the train whistles he received with any source other than Mr. Stewart. There was no indication that he or any of his customers associated the train whistles with plaintiff. Mr. Conn himself had not seen any train whistles before defendant called on him with a sample whistle; he did not know of plaintiff or his connection with the design of the whistles until Mr. Moore appeared in his store in the spring of 1981. We do not believe that Mr. Conn's testimony demonstrates that the Moore whistle had acquired any secondary meaning or distinctiveness.

We find that the Moore whistle has not acquired secondary meaning or distinctiveness and, therefore, plaintiff is precluded from any recovery under section 43(a) of the Lanham Act.

In summary, we conclude that the defendant has failed to prove any invalidity of U.S. Patent Design 263,383; that defendant Charles Stewart has infringed U.S. Patent Design 263,383 by the manufacture and sale of his whistle; that plaintiff is entitled to injunctive relief under 35 U.S.C. § 283; that defendant has infringed U.S. Patent Design 263,383 under 35 U.S.C. § 271 and is liable to plaintiff for such infringement; and that plaintiff should not recover from defendant for any violation

under section 43(a) of the Lanham Act. The issue of damages will be tried at a later date.

A separate judgment in accordance with this memorandum opinion will be concurrently entered.

## APPENDIX